## *In re* MINEAU.

*(Circuit Court, D. Vermont.   February 7, 1891.)*

1. HABEAS CORPUS—CONFLICT OF JURISDICTION.
    Rev. St. U. S. § 753, which declares that "the writ of *habeas corpus* shall in no case extend to a prisoner in jail," does not oust the federal courts of jurisdiction to release on *habeas corpus*, for the purpose of bringing him before a commissioner for examination, a debtor who is in jail under executions in civil actions, since such debtor is not confined at the suit of the state, but of his creditors.

2. SAME—ISSUANCE—RELATOR—MARSHAL.
    A deputy-marshal who has a commissioner's warrant for the arrest of such debtor on extradition proceedings has sufficient interest in the debtor's liberty to authorize him to apply for his release from jail on *habeas corpus*.

3. UNITED STATES COMMISSIONERS—WARRANT—EXTRADITION.
    Under the general power given to commissioners by Rev. St. U. S. § 727, to hold persons for security of the peace and good behavior, a commissioner may issue a warrant for the arrest of a person charged with the commission of an extraditable offense in a foreign country.

4. SAME—PLEADING.
    It is not necessary to the validity of such warrant that it should appear affirmatively in the first instance that the proceedings are instituted at the request or by the authority of the foreign government.

At Law.   On application for *habeas corpus*.

*Albert P. Cross,* for relator.

*J. A. Brown* and *D. J. Foster,* for creditors and prisoner.

WHEELER, J.   The relator, a deputy-marshal, has a commissioner's warrant for the arrest of the prisoner on extradition proceedings for forgery in Canada.   The return of the jailer shows that the prisoner was committed to his custody on two executions and two writs of attachment in civil actions against the body of the prisoner as an absconding debtor. No question is or can be made but that the offense is within the treaty between the United States and Great Britain of 1842 for the surrender of criminals.

The first one relied upon is whether the relator has sufficient interest to authorize him to move for this writ, for it will not be issued in favor of every indifferent person. But the relator has the right, and is under the duty, to take the body of the prisoner, and bring him before the commissioner, to be dealt with in the extradition proceedings, if he can. This commitment on these civil processes is in his way. Thereby he has a direct right and full interest to have the body of the prisoner relieved from this detention. *Ex parte Virginia*, 100 U. S. 339.

Further question is made whether a commissioner has sufficient authority to issue a valid warrant in such a case, as congress has not expressly provided for one in respect to arrests pursuant to this particular treaty. Commissioners have general power to hold persons for security of the peace and good behavior. Rev. St. U. S. § 727. This seems to include power to arrest in order to carry out treaty obligations for such purposes. Whart. Int. Law Dig. § 276b. The right to arrest covers the right to issue a warrant, and the practice of issuing warrants in such cases is covered by the general provisions of the statutes governing proceedings under treaties, and is well settled. *In re Herres*, 33 Fed. Rep. 165; Rev. St. §§ 5270, 5271. The complaint on which the warrant was issued was made by a private person, and the proceedings do not yet show that they are instituted at the request or by authority of the Canadian government. That an agent of that government has been appointed to act in obtaining the prisoner to answer for this offense has been shown in this hearing. While the request or authority of that government must appear at some stage of the extradition proceedings, it need not be shown in the first instance. This agent, or some other, may appear afterwards. The force of the warrant is not yet affected for want of it. Id. The custody of the prisoner is wanted for taking him before the commissioner, and the right to it, for that is what is now in controversy. It can properly be awarded only so far as the exigencies of the extradition may require it, subject to return to the custody of the jailer as to his present commitment if the extradition fails.

Another and very important question is whether this court has jurisdiction of this writ in this case. The whole right of the relator to the prisoner rests upon the stipulations of the treaty, which derive their whole force from the constitution of the United States. If the prisoner is detained from the relator as an officer of the United States carrying out the treaty, the detention is in violation of the treaty. The statutes on this subject provide that "the writ of *habeas corpus* shall in no case extend to a prisoner in jail, unless where he is in custody  *  *  * in violation of the constitution or of a law or treaty of the United States." Rev. St. § 753. The state of Vermont has no interest in the detention of the prisoner. It furnishes the jail as a place of safe-keeping of the debtor for the creditor. The execution shown in the return commanded keeping of the prisoner until discharged by the creditors, or otherwise, by order of law. This is in accordance with the form prescribed and with the rights of the creditors. Rev. Laws Vt. § 4550, form 5. They alone had power to put the proceedings in motion, and they have full power

to discharge the prisoner from the custody of the jailer. His custody is wholly for the creditors, and they alone have any interest in it.

No question whatever between the United States or the foreign country and the state can arise upon the writ. The controversy is wholly between the United States under its treaty obligations and the creditors. If the government of the United States has a right, as against the creditors, to the body of the debtor, for the purpose of carrying out those obligations, the custody of the prisoner should be awarded to the relator so far as the extradition may require it. Private civil rights to the body of the debtor or defendant in a civil action are subservient to the right of the government to punish for crime. Bail in civil actions may have *habeas corpus* to bring the body of the principal out of custody in criminal proceedings for surrender; and, after the surrender into custody in the civil proceedings, the prisoner may be taken out of that custody on the criminal process. *Bail of Vergen,* 2 Strange, 1217; *Bond* v. *Isaac,* 1 Burrows, 339; *Daniel* v. *Thompson,* 15 East, 78; *Bigelow* v. *Johnson,* 16 Mass. 218; *Biggnell* v. *Forrest,* 2 Johns. 482. In *Sharp* v. *Sheriff,* 7 Term R. 226, *habeas corpus* was granted to bring a prisoner in custody to be sent on application of the secretary of state to Ireland, charged with crime there, for surrender in discharge of bail; and after surrender the prisoner was committed on the criminal charge. In *Bigelow* v. *Johnson,* above cited, PARKER, C. J., said:

"A man in prison, although for crime, may be served with civil process, and be technically arrested. It is true that the proceedings at the suit of the commonwealth may eventually supersede the imprisonment on civil process; and so they might if the culprit had been previously confined on civil process. The arrest is legal, notwithstanding, and the subsequent disposition of the person arrested is by public authority, for a public purpose, to which private interests must always yield."

That arrest in a civil proceeding will not hinder extradition for crime, is laid down in Moore, Extr. § 370. The author as to this says: "The theory is that the public interest in the punishment of crime is paramount in importance to the enforcement of private demands." This treaty is a part of the criminal law of the land. This prisoner is charged with a crime in another country, but the consideration for surrender is assistance in enforcing the criminal laws of this country. If arrest on civil process would prevent extradition, a safe asylum for fugitives from justice could be easily provided. Careful consideration of the principles involved, however, leads to the conclusion that such is not the case. The relator appears to be entitled to the prisoner for the purpose of subjecting him to the extradition proceedings, but the custody of the jailer should be maintained, except as it may be displaced by those proceedings.

The custody of the prisoner is awarded to the relator, Thomas Failey, deputy-marshal, for the extradition proceedings, and for return to the jailer if those proceedings fail.