### Case No. 5,806.

GREY v. THOMAS et al.

[1 N. J. Law J. 139.]

District Court, D. New Jersey.  Feb. 26, 1878.

BANKRUPTCY—FRAUD.

A bill of complaint to set aside as fraudulent a transfer of personal property by the bankrupt, if the petition in bankruptcy was filed before the amendment of June 22, 1874 [18 Stat. 178], must allege that the transfer was made with the knowledge of the defendant that it was fraudulent.

On demurrer to bill of complaint filed by assignee in bankruptcy to set aside as fraudulent a transfer of personal property by the bankrupt to the defendants. The special causes assigned for demurrer were: 1, That the bill does not allege, nor does it anywise appear, that the transfer was made within two months next preceding the time of filing the petition in bankruptcy. 2, That there is no allegation that at the time of the transfer the defendants knew that it was fraudulent in law.

James Wilson, for demurrer.

Samuel H. Grey, for assignee.

NIXON, District Judge.  The petition in bankruptcy was filed June 13, 1874, and before the amendment of June 22, 1874, was enacted. The transfer complained of took place while the original act was in force, to wit, about April 1, 1874; and the question raised by the demurrer is, whether the case is to be determined by the law as it stood when the transfer was made, and the petition in bankruptcy was filed, or by the law as it has been amended when the suit was commenced. There has been considerable discussion of this question in other districts, the judges reaching different conclusions, but it is now raised for the first time in this

court. As to the conflicting views elsewhere, see Hamlin v. Pettibone [Case No. 5,995]; Brooke v. McCraken [Id. 1,932]; Van Dyke v. Tinker [Id. 16,849]; In re Montgomery [Id. 9,732]; Bradbury v. Galloway [Id. 1,764]; In re King [Id. 7,781]; Singer v. Sloan [Id. 12,898]; Boothe v. Brooks [Id. 1,650]; In re Griffiths [Id. 5,825]. It is to be borne in mind that the transaction complained of was the transfer of property by a debtor to a creditor to pay an antecedent debt: an act not forbidden in morals, or by the common law, but contrary to the provisions of the bankrupt law of 1867, [14 Stat. 517,] and, if impeachable, it is only so because it was done within the time and under the circumstances prohibited by said law. When the transfer was made and when the petition in bankruptcy was filed, the assignment could not be invalidated, unless other creditors took steps by involuntary proceedings in bankruptcy to set it aside within four months from the date of the transfer and the creditor, who received the conveyance, had reasonable cause to believe that it was made in fraud of the provisions of the act. This suit was brought in August, 1876, and then the limitation in time had been narrowed to two months, and the preferred creditor was required to know that a fraud upon the law was intended.

These two changes were introduced by the 10th and 11th sections of the amendatory act of 1874. As they are remedial in their character, it was within the power of congress to have them applicable to the decision of cases growing out of pending bankruptcy proceedings if they desired to do so. The constitution of the United States imposes no restraint upon the legislative authority in regard to the enactment of retroactive laws, whether they affect vested rights or the obligation of contracts. The prohibition there is to ex post

facto laws, which have always been held to include only penal and criminal statutes. Watson v. Mercer, 8 Pet. [33 U. S.] 110; Carpenter v. Com., 17 How. [58 U. S.] 463; Cooley, Const. Lim. 264.

The power being clear, what was the intention? In determining this, the 13th section of the Revised Statutes of the United States, in force when the amendment was approved (see section 5601, Rev. St.), must not be overlooked. It was originally enacted in 1871, and was entitled "An act prescribing the form of the enacting and restraining clauses of acts and resolutions of congress, and rules for the construction thereof," and is as follows: "The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability." This section may be regarded as a congressional approval of the rule of construction announced by the supreme court in Harvey v. Tyler, 2 Wall. [69 U. S.] 347; to wit, "that all statutes are to be considered prospective, unless the language is express to the contrary, and there is a necessary implication to that effect."

It is not necessary to speculate upon what would have been the effect of the provisions of this section on the action if it had been pending when these changes in the law were enacted. It has been commenced since, and the changes will be operative and will release or extinguish any liability incurred at the time of the repeal, if it appears expressly or by necessary implication that congress intended them to be applied to all subsequent suits. They have reference to the remedy solely: and involve (1) the time between the transfer and the adjudication, and (2) the evidence by which the suit is to be maintained. By the last section of the amendatory act of 1874, all acts and parts of acts inconsistent with its provisions are expressly repealed. The change in regard to the lapse of time between the transfer and the adjudication in bankruptcy was not to take effect until two months after the passage of the act. The other change was absolute and instantaneous in its operation. If congress had intended to except future suits, instituted beyond the period of two months from the date of the enactment, that intention would have been manifested in view of the well-settled principle, that the right to a particular remedy is not a vested right, and where a statute providing a remedy is repealed while proceedings are pending, such proceedings will be thereby determined, unless the legislature shall otherwise provide. This was held by the supreme court in the case of Bank of Hamilton v. Dudley, 2 Pet. [27 U. S.] 492. The state of Ohio had a law in force

authorizing administrators to sell the real estate of intestates for the payment of debts by order of the county courts. Such an order was obtained in this case, but pending the proceedings under it and before the order for sale was fully executed, the law was repealed. Chief Justice Marshall, delivering the opinion of the court, held the repeal terminated all the proceedings under the order. "The repeal of such a law," says he, "divests no vested estate, but is the exercise of a legislative power which every legislature possesses. The mode of subjecting the property of a debtor to the demands of a creditor must always depend on the wisdom of the legislature."

Demurrer sustained.