## In re ADUTT.

(Circuit Court, N. D. Illinois. April 18, 1893.)

1. FEDERAL COURTS—CIRCUIT COURT—JURISDICTION—HABEAS CORPUS—UNITED STATES COMMISSIONER.

On a writ of habeas corpus, in behalf of one committed by a United States commissioner to the custody of the marshal to await action of the executive on demand of a foreign government for his extradition on the charge of forgery, the circuit court can inquire only as to the jurisdiction of the commissioner over the subject-matter, and whether there was legal evidence before him, supporting the judgment.

2. EXTRADITION—PROCEEDINGS—NECESSITY OF REQUISITION.

The initiative of proceedings for the extradition of an alleged criminal does not necessarily rest on a demand or requisition by the foreign government upon our government; but such proceedings may be commenced by the arrest of the person charged, under a warrant issued by a United States commissioner on complaint of a foreign consul. In re Kaine, 14 How. 103; Benson v. McMahon, 8 Sup. Ct. Rep. 1240, 127 U. S. 457,—followed.

3. FORGERY—UTTERING FORGED PAPER—TREATY.

The crime of uttering forged papers is included in the common-law definition of forgery, and in the term "forgery" as used in the treaty between Austria-Hungary and the United States.

4. SAME—FRAUD BY MEANS OF FORGERY.

The term "forgery," as used in the treaty, should have, so far as our government is concerned, its common-law definition, which includes forgery of commercial paper, though the crime of forgery, as known to the law of Austria-Hungary, comprehends the falsification of public obligations, and though the crime of forging commercial paper, charged against the prisoner, is there classified as "fraud by means of forgery."

5. EXTRADITION—PLEADING—COMPLAINT BY FOREIGN CONSUL.

Where the complaint states that complainant is the duly-accredited official agent of the foreign government, it is not necessary that a complainant should swear positively in the jurat that he is consul.

6. SAME.

The complaint, to give jurisdiction, need not have the precision and particularity of an indictment, but should set forth the substantial and material features of the offense, so that the court can see that the particular crime charged is one enumerated in the treaty.

7. SAME—WARRANT.

A warrant charging the prisoner with forgery and uttering forged paper is not objectionable as charging two offenses, since both are comprehended within the crime of forgery at common law.

Petition by Jacques Licco Adutt for writ of habeas corpus. Petitioner remanded.

A. Moses, for petitioner.
John C. Richberg, for Austrian Government.

JENKINS, Circuit Judge. The petitioner, upon complaint of the consul, at Chicago, of the Austria-Hungary government, was, by the United States commissioner, committed to the custody of the marshal to await the action of the executive upon demand of the Austria-Hungary government for his extradition, upon the charge of forgery. He thereupon sued out this writ of habeas corpus to obtain his discharge, and a writ of certiorari to the commissioner to bring up the proceedings before him.

Many objections were raised by the petitioner, at the hearing, to the jurisdiction of the commissioner, and to the regularity of the proceedings before him, but I deem it necessary to consider only the following: First, that there is no evidence in the record of any demand or requisition made by the government of Austria-Hungary upon the government of the United States of America for the extradition of the prisoner; second, that the treaty with that government covers only the crime of forgery, and not the offense of uttering forged paper; third, that the crime of forgery, as known to the law of Austria-Hungary, comprehends only the falsification of public obligations, and not the forging of commercial paper; fourth, that the offense with which he is charged at Vienna is "fraud by means of forgery;" fifth, that the complaint to the commissioner does not state that Mr. Claussenius, the Austria-Hungary consul, in preferring the complaint, acted in the capacity of the representative of his government; sixth, that the complaint is defective and void as to jurisdiction, in that it does not set forth the particulars of the commercial paper alleged to be forged.

The office of a writ of habeas corpus is not to correct irregularities; is not to reverse the decision of the commissioner because of some incompetent evidence admitted; is not to review his decision upon the weight and sufficiency of the testimony. This court can only inquire as to the jurisdiction of the commissioner over the subject-matter, and whether there was legal evidence before him, supporting the judgment.

The first objection presents a question which has vexed the courts and executive department of the government for many years. I need not here enter into a recital of the conflicting decisions upon this point, except to say that it would seem to have been decided against the petitioner in Re Kaine, 14 How. 103, and in Benson v. McMahon, 127 U. S. 457, 8 Sup. Ct. Rep. 1240. It would, I think, in the protection of individual liberty, be more seemly to require that the initiative of proceedings for extradition should rest with the government of the United States, upon demand of a foreign government, than that they should be allowed to be instituted by a consul of a foreign government without authorization of our own government, and would also, I think, better comport with the dignity of the government, and of judicial proceedings; but I feel concluded by the decisions to which I have referred, and am therefore unable to sustain this objection.

The second objection—that the crime of uttering forged paper is not comprehended in the term "forgery"—is, I think, not maintainable. The common-law definition of forgery does include the utterance of forged paper.

The third objection—that the crime of forgery, as known to the law of Austria-Hungary, comprehends only the falsification of public obligations, and not the forging of commercial paper—is, I think, not maintainable. The term "forgery," as used in the treaty, should have, so far as this government is concerned, its common-law definition, as it was undoubtedly used in that sense. The law of the Austria-Hungary government, as expounded by Mr. Ziesler, does

not indicate that "forgery" includes only the falsification of public documents. There is designated in its law the crime of falsification of public documents, and there would also seem to be the crime of falsification of private documents, treated in the Criminal Code of that country as one of the species of crime classified under the general head of "betrug," or "fraud." It is under that head defined to be a crime to manufacture false private documents, or falsify genuine ones. We must look to the essence of the offense, and not to its mere denomination in foreign Codes, to ascertain just the offense comprehended in the treaty. And the spirit of that treaty is, as I conceive, that one should be extradited for the commission of the offense known as forgery, by whatever name it may be called in the Criminal Code of Austria-Hungary; and if the charge before the commissioner is that of forgery, as known to our law, and the evidence is sufficient to hold the prisoner for the action of the executive, it is, I think, quite immaterial that the offense of forgery, as known to our law, is classified in Austria under the title of "Fraud by Means of Forgery."

I am unable to sustain the fourth objection. The complaint states that the complainant is the duly-accredited official agent and representative of the Austria-Hungary government, at Chicago. The criticism upon the jurat to the complaint, that he does not there positively swear that he is the consul, but that his title is merely descriptio personae, is ill sustained in view of the positive statement in the body of the complaint; and the description of his person in the jurat was unnecessary, and is superfluous. It is doubtful, also, if it be essential that the complaint should show that it was preferred by the representative of a foreign government. It is enough, probably, if to the commissioner, or to the executive acting upon the proceedings before the commissioner, it duly appears that the proceeding is in fact instituted and conducted by the demanding nation, or its duly-accredited representative. It would, I think, be the better practice that the initiative of the proceeding should show that it was instituted by the demanding government; but it seems to have been considered unnecessary, so long as it does appear in the proceedings, as a matter of fact, that they are sanctioned by the demanding government. Benson v. McMahon, supra.

The fifth objection—that the complaint is defective as to jurisdiction—cannot, I think, be sustained. It is, of course, necessary that the substance of the offense charged should be declared, so that the court can see that the particular crime charged is one enumerated in the treaty; but a complaint need not have the precision and particularity of an indictment, but should set forth the substantial and material features of the offense. In re Henrich, 5 Blatchf. 414; In re McDonnell, 11 Blatchf. 79. In the latter case the complaint charged that the prisoner did "commit the crime of forgery and the utterance of forged paper, to wit, did feloniously, in the said city, and at the time aforesaid, forge and utter, well knowing the same to be forged, several acceptances of two several bills of exchange, each for the payment of one thousand pounds sterling, lawful money of the United Kingdom of Great Britain

and Ireland." The court held that this complaint did charge the crime of forgery at common law, although without the particularity required in the formal indictment for the offense. The complaint here, while I think it greatly wanting in particularity of description, does charge the forging of certain bills of exchange, of the value of 81,000 gulden, Austrian coin. I am inclined to hold this complaint sufficient to give the commissioner jurisdiction, because it charges the crime of forgery. In all such cases as these, however, the commissioner, upon objection of the petitioner, should require an amendment of the complaint, that the petitioner may be fully informed of the particular charge for which he is sought to be extradited, and all the particulars of that charge. He ought not to be required to defend himself against a charge of forging certain bills of exchange without being advised by the complaint of all the particulars of the bills which he is charged with forging. That is, however, a matter for the commissioner, acting within his jurisdiction, and not a matter going to the jurisdiction of the commissioner to entertain the complaint.

There was a further objection made, that the warrant under which the prisoner was arraigned charges two offenses,—the forging and the uttering of the forged paper. It need only be said, as to that, that both are comprehended within the crime of forgery, at common law.

I desire to add, in conclusion, that I have been greatly impressed with the dissenting opinion of Mr. Justice Nelson, concurred in by Chief Justice Taney and Justice Daniel, in Re Kaine, 14 How. 103, and should be glad to see the principles there asserted adopted in all extradition proceedings. The danger to individual liberty by the institution of these proceedings, except under the sanction of the executive of the United States, is too grave to be tolerated. Proceedings in interstate rendition can only be set in motion by the executive of one state upon demand of the executive of another. So should it be with respect to extradition. I should be glad to see the jurisdiction of the commissioner called into action only upon the request of the executive. It is true that extradition can be had finally only upon the action of the executive, but there cannot be too many restrictions to the encroachment upon individual liberty. I should also be glad to see a requirement by law that the complaints in such cases as this should be required to have the particularity with respect to charging the offense that is required in formal indictments. This is important in view of the holding that one can be tried in the demanding country only for the offense for which he was demanded and extradited. I feel bound, however, by the decisions, and practice under them, to hold this proceeding sufficient.

It was urged at the hearing that there was not sufficient legal evidence before the commissioner to sustain his holding. I have carefully inspected the record, and, without particularizing the facts, I deem it only necessary to observe that I think there was abundant legal evidence before the commissioner, upon which he

might well find that the offense had been committed by the petitioner.

The prisoner will be remanded to the custody of the marshal, to be held under the commitment of the commissioner, awaiting the order of the president of the United States in the premises, and the writs of habeas corpus and certiorari are discharged.