In re NEELY.

(Circuit Court, S. D. New York. July 18, 1900.)

1. EXTRADITION—POWER OF CONGRESS TO AUTHORIZE.

It is within the power of congress to provide by statute for the extradition of fugitives from the justice of a foreign country without any reciprocal treaty, but as a matter of international comity, and such power is not affected by the character of the criminal procedure in such country, or by the fact that the alleged offender against its laws may be a citizen of the United States.

2. SAME—CONSTITUTIONALITY OF STATUTE — FOREIGN COUNTRY OCCUPIED BY UNITED STATES.

Act June 6, 1900, amending the extradition laws by authorizing the extradition of persons charged with violation of the criminal laws of any

foreign country or territory which. or any part of which, is occupied by or under the control of the United States, is not unconstitutional, as applied to Cuba, on the ground that under the constitution the United States cannot occupy or exercise control over the island, since its inhabitants are free and independent. The United States was in military occupation of the island as the territory of an enemy at the time it compelled Spain, as the result of the war, to relinquish her sovereignty over it, and may constitutionally continue such occupancy until the political branch of the government shall determine that it is no longer necessary.

3. SAME—PROCEEDINGS—OBJECTIONS TO DOCUMENTS.

Technical objections to documents in extradition proceedings as to matters of form are not entitled to favorable consideration by the courts, and if the certificates, signatures, etc., are in substantial conformity to the requirements of the statute, and give reasonable assurance of authenticity, it is sufficient.

Proceedings for the extradition to Cuba of Charles F. W. Neely. On preliminary objections.

Henry L. Burnett, U. S. Atty.
John D. Lindsay, for the accused.

LACOMBE, Circuit Judge. Argument was heard on the preliminary objections on June 29th, and the 23d of July was then designated for the presentation of testimony on the question of probable cause in the event of the court's overruling such objections. That date is so near at hand that decision on the objections should be filed forthwith. Counsel have taken so long to prepare briefs (they were only received yesterday) that there is not the time to enter into any elaborate discussion of the points presented; nor, indeed, is any such discussion necessary. Some of the objections advanced on the oral argument appear not now to be pressed, and those still urged do not present any difficult questions. This proceeding is brought under a recent amendment to section 5270 of the United States Revised Statutes, hereinafter referred to as the "Act of June 6, 1900." To the existing provisions as to extradition it adds the following:

"Whenever any foreign country or territory or any part thereof is occupied by or under the control of the United States, any person who shall violate, or who has violated the criminal laws in force therein, by the commission of the following offenses, namely: [Here follows a long enumeration, which includes "embezzlement or criminal malversation of the public funds, committed by public officers, employés, or depositaries,"] and who shall depart or flee, or who has departed or fled, from justice therein to the United States, any territory thereof or to the District of Columbia, shall, when found therein, be liable to arrest and detention by the authorities of the United States, and on the written request or requisition of the military governor or other chief executive officer in control of such foreign country or territory shall be returned and surrendered as hereinafter provided to such authorities for trial under the laws in force in the place where such offense was committed. All the provisions of sections fifty-two hundred and seventy to fifty-two hundred and seventy-seven of this title, so far as applicable, shall govern proceedings authorized by this proviso: provided, further, that such proceedings shall be had before a judge of the courts of the United States only, who shall hold such person on evidence establishing probable cause that he is guilty of the offense charged: and provided further, that no return or surrender shall be made of any person charged with the commission of any offense of a political nature. If so held such person shall be returned and surrendered to the authorities in control of such foreign country or territory on the order of the secretary of state of the United

States, and such authorities shall secure to such a person a fair and impartial trial."

Under the exercise of the treaty-making power, congress has the right to provide for the return of a fugitive criminal to the foreign country from which he has fled; and, waiving any requirement of entire reciprocity from the foreign country, it may, by statute, without treaty, provide for such return. This power has been exercised by the federal government for years without question. It is a power exercised by every sovereign state, sometimes in accordance with the provisions of a treaty, sometimes without any treaty, as a matter of international comity. The mere fact that the individual who has committed a crime in a foreign country is himself a citizen of the United States does not prevent the United States from returning him to the country against whose laws he has offended. Having voluntarily gone into the foreign country to commit his crime, he may involuntarily be returned there for trial and punishment. Nor is it any sound objection against the extradition of the criminal citizen that the courts in the country to which he is returned follow a procedure different from our own. The provisions of articles 4 and 5 of the amendments to the constitution have no relation to the subject of extradition. In re De Giacomo, 12 Blatchf. 391, Fed. Cas. No. 3,747. He may be returned to some Latin country, where conviction might follow upon hearsay testimony, or even upon vociferous declarations of belief by more or less credulous individuals. If congress chooses to make such a treaty, he may be sent to Turkey, or Siam, or Zanzibar, where it is safe to assume the procedure bears still less likeness to the common law. Having himself selected the forum for the commission of his crime, he will not be heard to object that the procedure of its courts is not quite what he would prefer when he comes to stand trial. Any other rule would make this country an inviolable asylum for its citizens whenever they may return to it red-handed from crimes committed abroad, for its courts cannot punish for a crime committed in a foreign country. These propositions are elementary, and nothing in the brief or in the oral argument challenges their accuracy. The principal objection advanced on behalf of the prisoner, whose identity is not disputed, is that this particular act of June 6, 1900, is unconstitutional, because it provides for extradition to a foreign country occupied by or under the control of the United States; or possibly, to state the argument more accurately, because under the constitution the United States cannot occupy or exercise control over the Island of Cuba, since its inhabitants are free and independent. The joint resolution of April 19, 1898, declared that "the people of the Island of Cuba are, and of right ought to be, free and independent," and this finding as to their status may be accepted by the courts. Nevertheless it is an historical fact of which the courts will take judicial notice that on that same day the territory of that island was occupied by Spain. Against that power we declared war, we sent our fleets and armies to the island, invaded it, joined battle with our alien enemies therein, and continued the struggle with them until throughout the length and breadth of the island our forces were in full military occupation of

this foreign territory. The declaration of war was in no wise obnoxious to the constitution, nor was the invasion, nor the conflict, nor the result. In the entire sequence of events down to the date of Spain's acquiescence in such result by the ratification of the treaty of Paris, counsel for the prisoner finds nothing to criticise as obnoxious to the federal constitution. On the day that treaty was signed we were indisputably in military occupation of the island. Why, under the constitution, that occupation, legitimately entered upon, may not continue to secure the lives and property of American citizens within that territory, until the political branch of the government shall be satisfied that its further continuance is unnecessary, it is difficult to conceive, and no authority cited in the brief sustains any such proposition. Reference is made to Ex parte Milligan, 4 Wall. 2, 18 L. Ed. 281, but that case is not at all in point. There a citizen was tried by a court-martial, not in a foreign country, but in the state of Indiana, a portion of the United States, not at the time a part of the theater of war, with civil courts organized and in full operation, having jurisdiction to hear and determine all questions as to the offense with which he was charged. But there is no suggestion here that, if remanded to Cuba, Neely will be tried by a court-martial or otherwise than by a civil court following the same procedure as that prevailing before the concession of Cuba's independence. And, indeed, if the criminal laws of the island be enforced solely by courts-martial, that circumstance would not be a sufficient answer to request for extradition. Having chosen the country in which to commit the crime, he must accept the tribunals which administer its laws. Moreover, it will be noted that the act of June 6, 1900, is most careful to safeguard the party accused against unsubstantial charges of crime. It provides that before the accused is returned there shall be an inquiry before a judge of a federal court, "who shall hold such person on evidence establishing probable cause that he is guilty of the offense charged." If the evidence fails to establish probable cause, the accused shall not be returned. This means probable cause tested by the practice of our courts, and supported by evidence which we would hold competent. No mere statement of an official that he has caused an examination into the facts to be made, with such and such a result, is of any probative weight; nor is hearsay competent, nor unverified copies of documents. There must be laid before the court sworn statements as to facts (not as to beliefs, or opinions, or deductions), from which the judge may reach the conclusion, despite such explanatory evidence as the accused may offer, that there is a prima facie case made out against him. The objection that the act of June 6, 1900, is unconstitutional is unsound.

Various technical objections are urged to the sufficiency (in form) of the various documents presented; as, for instance, that a certain certificate is signed by the military governor, and not by the principal diplomatic or consular officer; and that there is no certification that certain depositions are so authenticated "as to entitle them to be received for similar purposes by the tribunals of the foreign country," —probably not material when authenticated so as to be received upon

the special independent investigation to be had here under the act of 1900. Objections of this class are not given the weight once accorded to them when the granting of a request for extradition was more jealously regarded by the courts than it is to-day. Originally it seemed to be the theory that the sole foundation of the practice rested in reciprocity; and that, if some particular foreign country were backward about returning our criminals, we would be keen to keep theirs. During this period courts were astute to find flaws in certificates, jurats, seals, and signatures as an excuse for refusing the request of some demanding government. At last, however, it seems to have been discovered that the thief, the ruffian, or the forger was not a particularly valuable acquisition; and that, although it might be highly desirable that offenders against our laws should be brought back here and tried, as a deterrent example, it was possibly more important that this country should not be made a city of refuge for foreign criminals, and that an enlightened public policy would be astute to return them, once we were satisfied that they were criminals. The expression of this public policy is found in the provisions of the act of congress which excludes convicted criminals whose offenses are not political, with those afflicted with contagious diseases and such as are liable to become a public charge. Since then there has not been so much hypercriticism in dealing with objections as to form, and if the certificates, signatures, etc., are in substantial conformity to the requirements of the statute, and give reasonable assurance of authenticity, it is sufficient. Such seems to be the case here, and the documents are admitted for what they may be worth. Some of them are mere declarations of opinion, containing no relevant facts. Their effect, however, will not now be discussed.

Upon the oral argument some question was made as to whether article 401 of the Penal Code of Cuba and Porto Rico or sections 37 and 55 of the Postal Code were in force in Cuba at the time of Neely's alleged offense. It is assumed from the circumstance that this point is not discussed in the briefs that counsel acquiesce in the suggestion made by the court upon the argument, that the question now to be determined is whether there is probable cause that the prisoner committed the offense enumerated in the act of June 9, 1900. If that be shown, it may be left to the trial court to decide which specific provision of these Codes was in force and violated. The description of offense in either Code is clearly within the broad language of the act of June 6, 1900.

Counsel have discussed the evidence. This is premature, and will not be considered by the court until after the hearing on July 23d, when further proofs may be adduced. It will be sufficient now to indicate that the mere presentation of an indictment or its equivalent cannot be held sufficient under this act. The court is to find probable cause on evidence. Witnesses need not be brought from Cuba to testify here, but their sworn statements can certainly be obtained, so that the court's conclusion may be based upon competent proof of facts within the knowledge of the witnesses. The preliminary objections are overruled. The hearing on July 23d is fixed for 1:30 p. m.