---

## In re GRIN.

### (Circuit Court, N. D. California. December 18, 1901.)

### No. 13,180.

1. CRIMINAL LAW—EXTRADITION—UNITED STATES COMMISSIONERS—EXAMINATION—COMMITMENT.

Under the provisions of Rev. St. U. S. § 727, vesting commissioners of the circuit courts with the same authority to hold to security of the peace and for good behavior as may be lawfully exercised by any judge or justice of the respective states; section 1014, giving them power to arrest, imprison, or bail offenders; section 627, authorizing the appointment of such commissioners by the court; and 29 Stat. 184, authorizing United States district courts to appoint United States commissioners, who shall have the same powers and perform the same duties as commissioners of the circuit courts,—a commissioner appointed by a district court may examine and issue a warrant for commitment, under Rev. St. U. S. § 5270, for an offense committed in a foreign country with which the United States has a treaty of extradition.

2. SAME—WARRANT OF ARREST—JURISDICTION.

The jurisdiction of a United States commissioner to examine and commit one who has committed crime in a foreign country, and certify the proceedings to the secretary of state, is not dependent on the fact that he issued the warrant of arrest.

3. SAME—TECHNICAL OBJECTIONS—POLICY OF COURTS.

Where a substantial conformity with the requirements of the statutes is shown in the prosecution of criminals, it is not the policy of the courts to allow mere technical objections as to form, etc., to interfere.

4. SAME—EMBEZZLEMENT—COMPLAINT—CHARGE—"FRAUDULENTLY."

A complaint charging that defendant wrongfully, unlawfully, and feloniously appropriated and converted to his own use the money of his employer, which had been intrusted to him, and that he "embezzled the same," is a sufficient charge of embezzlement, though the word "fraudulently" is not used.

5. SAME—OATH TO COMPLAINT—UNITED STATES COMMISSIONER.

An oath taken before a United States commissioner to a complaint made under Rev. St. U. S. § 5270, for the arrest of one who has committed a crime in a foreign country, is sufficient; such officer being authorized to administer oaths by 29 Stat. 184.

6. SAME—AUTHORITY TO MAKE COMPLAINT—CONSUL.

Where a complaint for the arrest of one charged with crime committed in a foreign country recites that the complainant is consul of such country, and that criminal proceedings have been instituted and a mandate issued from the state department of this government for the surrender of accused, and prays that the necessary proceedings may be had as directed in such mandate, and the official title of complainant is attached to his signature, it sufficiently appears that the proceeding is in behalf of such government, and evidence of special authority for such act should not be required.

7. SAME—WARRANT OF ARREST—SUFFICIENCY.

Among the documents contained in an application for extradition were two orders signed and sealed by the magistrate of a circuit court in Russia; one stating that he had investigated the preliminary examination in regard to the alleged embezzlement of the person sought to be extradited, and found certain facts, and ordered the arrest of the ac-

cused pursuant to statute. The second order, after reciting the same preliminary statement, found that he was arraigned pursuant to law for the crime for which he was to be brought up for examination, and ordered his arrest. *Held* to contain all the essentials of a warrant of arrest or other judicial document issued by a judge or magistrate, as required by treaty.

**8.** SAME—AUTHENTICATION OF PAPERS—AMBASSADOR'S CERTIFICATE—SURPLUSAGE.

In a certificate of the United States ambassador to the orders of arrest and accompanying papers for extradition that they are properly "authenticated, so as to entitle them to be received and admitted in evidence for similar purposes by the tribunals of Russia, as required by the act of congress of August 3, 1882," the words "in evidence" should be treated as surplusage, the use as evidence being included in the words "for similar purposes," and such surplus words do not constitute a material variance from the terms of such statute, requiring the papers to be so authenticated as to entitle them "to be received for similar purposes" in Russia.

**9.** SAME—INDICTMENT—WHEN NECESSARY.

Where, in extradition proceedings, the accused is found and arrested in a state in which indictment is not required, it is not necessary to produce the indictment, though it appears by the record that one was found in the country in which the crime was committed.

**10.** SAME—MANDATE OF SECRETARY OF STATE—STATEMENT OF OFFENSE.

A statement of the offense with which the fugitive is charged in general terms, importing that it is an offense within the treaty, is all that is required in the mandate issued by the department of state in extradition proceedings.

**11.** SAME—EMBEZZLEMENT—FACTS CONSTITUTING.

The accused in extradition proceedings, while in Russia, received money from his employer to deliver to a certain company. Instead, he appropriated the money to his own use, and fled to the state of California, where he was arrested, charged with embezzlement. *Held*, under Pen. Code Cal. §§ 503, 508, defining "embezzlement" as "the fraudulent appropriation of property by a person to whom it has been intrusted," or who received it "by virtue of his employment," the offense was properly designated in the charge.

George D. Collins, for petitioner.

Horace G. Platt, for Paul Kasakevitch, Russian imperial consul at San Francisco, acting for and on behalf of the demanding government herein, the empire of Russia.

MORROW, Circuit Judge. Extradition proceedings for the surrender of the petitioner herein were instituted on behalf of the empire of Russia, under the provisions of the treaty of 1893 between the United States and Russia, charging the petitioner with the crime of embezzlement, committed under the following circumstances: On the 6th day of March, 1901, Simeon Ivanow Grin, a Russian subject, was residing in the city of Rostov on the Don, in the empire of Russia, and was in the employ of the representatives of the firm of E. L. Zeefo & Co., an export corn-trading concern doing business in that city. On that day Grin was intrusted with the sum of 25,000 roubles in Russian money, in his capacity as clerk, by one of said representatives of the firm of Zeefo & Co., and instructed to deliver the said money to the administration of the Vladikavkaz Railroad, in said city. Grin did not deliver the money as directed, but appropriated the whole amount to his own use, and imme-

diately absconded from the empire of Russia to the United States; locating in the city and county of San Francisco, state of California. On October 8, 1901, the mandate of the secretary of state of the United States was issued to the officers given jurisdiction of extradition proceedings, under section 5270 of the Revised Statutes, directing the arrest of Grin upon the charge of embezzlement, and that a warrant should issue for his surrender to the empire of Russia, pursuant to treaty stipulations between that country and the United States, if, upon the proper proceedings, sufficient evidence of his guilt was produced. This mandate was presented to the United States district judge for the Northern district of California on October 16, 1901, together with the complaint of the Russian imperial consul stationed at San Francisco. The said judge thereupon issued a warrant for the apprehension of said Grin, in accordance with the terms of said mandate; ordering Grin to be brought before the said court. This warrant was directed to the United States marshal for the Northern district of California. The prisoner was not found within that jurisdiction, and on October 17, 1901, a second warrant was issued by said district judge for the apprehension of the said Grin, directed to the United States marshal of any district of California. This warrant provided for the bringing of the prisoner before Hon. E. H. Heacock, a commissioner of said court. On the same day a special order was made by said court authorizing the said commissioner to discharge all the duties and exercise all the powers which may be performed by a justice of the supreme court, or a circuit or district judge, under section 5270 of the Revised Statutes. The prisoner was arrested under this warrant in the Southern district of California, and brought before the said commissioner, when the usual proceedings were had. On November 23, 1901, the said commissioner certified to the secretary of state the record of such proceedings; also that he deemed the evidence produced sufficient to sustain the charge in the said complaint under the provisions of the extradition treaty and convention between the United States and Russia; and that he had therefore issued his warrant for the commitment of the said Grin to the custody of the United States marshal until proper orders were received from the president of the United States for his surrender to the proper officers of the Russian government. The said Grin thereupon petitioned this court for a writ of habeas corpus, and for a writ of certiorari to the said commissioner, requiring him to certify to this court the record, proceedings, and evidence, and his authority by virtue of which he assumed to issue and did issue a warrant of commitment against the petitioner. The petition was granted, the writs issued and obeyed, and the matter has been fully submitted to the court.

The petitioner alleges a want of jurisdiction in the commissioner to act herein, and sets forth certain alleged technical defects in the extradition papers. He contends that, if guilty at all, it is of the crime of larceny, and not embezzlement, as charged, and that for these reasons he should be discharged. The contention of want of jurisdiction in the commissioner to hear and determine this case

is based upon the fact that the complaint was not presented to the commissioner, and the warrant of arrest was not issued by him; and it is urged that in issuing the warrant, and making the same returnable before the commissioner, the district judge exceeded his power.

Section 5270 of the Revised Statutes of the United States provides:

"Whenever there is a treaty or convention for extradition between the government of the United States and any foreign government, any justice of the supreme court, circuit judge, district judge, commissioner, authorized so to do by any of the courts of the United States, or judge of a court of record of general jurisdiction of any state, may, upon complaint made under oath, charging any person found within the limits of any state, district, or territory, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or commissioner, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the secretary of state, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made."

The statute does not declare in mandatory terms that any special method of procedure shall be pursued after the issuance of the warrant upon the complaint. It merely designates the officers to whom the complaint may be presented, and who may hear and determine the sufficiency of the evidence to sustain the charge, under the provisions of the treaty or convention. The treaty provides specially that the surrender of criminals from either country to the other, "upon mutual requisitions and according to their respective regulations and procedure," "shall only be done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and commitment for trial if the crime or offense had been there committed." It is clear that neither the statute nor the treaty intended that other than the usual method of procedure in the preliminary examinations of criminal charges should be followed. The complaint in this case was presented to the United States district judge, who then issued a warrant returnable before him. The fugitive was not found within his district, but was located in the Southern district of the state. A second warrant for his arrest was then issued by the same judge, but made returnable before the commissioner, presumably for the convenience of the business of the court and the expedition of the matter in question. The United States district court for each judicial district is authorized by law "to appoint such number of persons, to be known as United States commissioners, at such places in the district as may be designated by the district court, which United States commissioners shall have the same powers and perform the same duties as are now imposed upon commissioners of the circuit courts." Section 19 of the act of May 28, 1896 (29 Stat. 184). Section 627 of the Revised Statutes, which was then in force, provided that each cir-

cuit court "may appoint, in different parts of the district for which it is held, so many discreet persons as it may deem necessary, who shall be called 'commissioners of the circuit courts,' and shall exercise the powers which are or may be expressly conferred by law upon commissioners of circuit courts." By section 727 of the Revised Statutes, commissioners of the circuit courts were vested with authority "to hold to security of the peace and for good behaviour in cases arising under the constitution and laws of the United States, as may be lawfully exercised by any judge or justice of the peace of the respective states, in cases cognizable before them." By section 1014, commissioners of the circuit court were vested with the power to arrest, imprison, or bail offenders for any crime against the United States, agreeably to the usual mode of process against offenders in such state; that is, the state wherein the offender may be found. The powers here given to commissioners of the circuit court, and which have been succeeded to by the commissioners of the district court, practically comprehend all preliminary examinations in criminal cases; the commissioner acting as an arresting, examining, and committing magistrate under the jurisdiction of the United States district court. In U. S. v. Berry (D. C.) 4 Fed. 779, 780, the court had occasion to consider the relation of the commissioner to the court in the performance of his official duties as an examining magistrate. The court said:

"It is plain that commissioners are but officers of the court, to whom are committed some of the duties which must otherwise be performed by the court itself, or the judge thereof. The exigencies of the public service demand that speedy inquiry shall be made into all criminal charges, in order that offenders may be brought to justice; and as, from the press of business or remoteness from the place where the crime may be committed, or other cause, the court cannot always or ordinarily perform that service, commissioners are appointed to facilitate the business. In all that they do they are not separate and independent tribunals, but the arms of the court to execute the preliminary work of securing the presence of offenders at the time appointed for arraignment and trial."

This was said with respect to proceedings against persons accused of offenses under the laws of the United States, but this statement of the relation of the commissioner to the court is even more applicable to proceedings relating to the extradition of fugitives from justice under section 5270 of the Revised Statutes. This section gives jurisdiction to certain judicial officers of the United States and state to hear and consider the evidence in extradition proceedings, and among the officers so mentioned are commissioners "authorized so to do by any of the courts of the United States." This power to hear and consider the evidence constitutes jurisdiction to determine the sufficiency of the evidence, and to make the certificate therein provided. Grignon's Lessee v. Astor, 2 How. 338, 11 L. Ed. 283. This jurisdiction is not impaired by the manner in which the accused is brought before the commissioner. Mahon v. Justice, 127 U. S. 700, 708, 8 Sup. Ct. 1204, 32 L. Ed. 283; Ex parte Ah Men, 77 Cal. 202, 19 Pac. 380, 11 Am. St. Rep. 263; People v. Pratt, 78 Cal. 345, 20 Pac. 731; In re Miles, 52 Vt. 609, In the case of In re Henrich, 5 Blatchf. 414, 11 Fed. Cas. 1,143 (No. 6,369), a warrant was issued by Mr. Justice Nelson of the su-

preme court of the United States, and the presiding judge of the circuit court for the Southern district of New York, directed to the marshals of the United States in any district, or to any of their deputies, commanding them to arrest Henrich forthwith and bring him before the said justice, or before Commissioner White, at the city of New York, or some other magistrate, that the evidence of the criminality of said Henrich might be heard and considered, pursuant to the treaty stipulations and the acts of congress in such case made and provided. Henrich was arrested in Wisconsin by a special deputy of the marshal of the Southern district of New York, and was brought before Commissioner White, at the city of New York, for examination. After hearing the evidence, the commissioner adjudged it sufficient to sustain the charge, and committed the accused to the custody of the marshal, to be kept in custody until he should be surrendered by the executive authority of the United States under the provisions of the treaty. An application was thereupon made to the United States circuit court for the Southern district of New York for a writ of habeas corpus to review the proceedings before the commissioner. The writ was issued to the marshal to bring the accused before the court, and a writ of certiorari was also issued to the commissioner to send up all the papers and proofs upon which he acted in the premises. The court reviewed the entire proceedings, and, while the precise question as to the jurisdiction of the commissioner urged in this case does not appear to have been raised in that case, nevertheless it was involved in the proceedings, and could hardly have escaped the attention of the court. If the jurisdiction of the commissioner to hear the case depended upon the fact that the warrant of arrest must have been issued by him, then he had no jurisdiction in that case, since the warrant of arrest was not issued by him, but by a justice of the supreme court of the United States. A district judge has the same power and authority under the statute as a justice of the supreme court of the United States, and, if the latter has the power and authority under the statute to issue a warrant of arrest in extradition proceedings returnable before a commissioner, so has the former. In any event, the jurisdiction of the commissioner to hear and consider the evidence in this case, and make the certificate provided by law, is not dependent upon the fact that he issued the warrant of arrest in obedience to which the accused was brought before him for examination.

The petitioner objects to the sufficiency of the various documents upon which these proceedings are based, in the following particulars: (1) That the complaint charges no embezzlement, in that it does not charge that the accused fraudulently appropriated the property; also that the averment that the defendant received the money "in his capacity as clerk" is not the equivalent of the statutory requirement that the money be in his control or care "by virtue of his employment." (2) That the complaint is defective, in that it does not affirmatively appear that the °oath was taken before an officer specially authorized by section 5270 of the Revised Statutes. (3) There is no evidence of authority to make the complaint on the part of the Russian consul. (4) No authenticated copy of a war-

rant of arrest by a fully authorized judge or magistrate is contained in the record, and the papers generally, aside from the depositions, are not authenticated. (5) No indictment appears in the record. (6) The certificate is defective, in that it does not identify the papers to which it relates, and is not in accordance with the requirements of the act of 1882, that the papers "shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped." The fatal defect claimed is that the certificate states that the papers are so authenticated as to entitle them to be received and admitted as evidence for similar purposes by the tribunals of Russia. (7) That the mandate is a nullity, as it does not in terms designate the kind of embezzlement charged, so as to show it to be within the treaty.

While these objections will be given due consideration, it may be remarked at the outset that it is not the policy of the courts at this day to allow mere technical objections as to form, etc., to interfere with the prosecution of criminals, where a substantial conformity with the requirements of the statutes is shown. This policy is well expressed in the case of In re Neely (C. C.) 103 Fed. 626, where, in extradition proceedings, various technical objections were urged to the sufficiency in form of the documents presented. The court said:

"Objections of this class are not given the weight once accorded to them, when the granting of a request for extradition was more jealously regarded by the courts than it is to-day. Originally it seemed to be the theory that the sole foundation of the practice rested in reciprocity, and that, if some particular foreign country were backward about returning our criminals, we would be keen to keep theirs. During this period courts were astute to find flaws in certificates, jurats, seals, and signatures as an excuse for refusing the request of some demanding government. At last, however, it seems to have been discovered that the thief, the ruffian, or the forger was not a particularly valuable acquisition, and that, although it might be highly desirable that offenders against our laws should be brought back here and tried, as a deterrent example, it was possibly more important that this country should not be made a city of refuge for foreign criminals, and that an enlightened public policy would be astute to return them, once we were satisfied that they were criminals. The expression of this public policy is found in the provisions of the act of congress which excludes convicted criminals whose offenses are not political, with those afflicted with contagious diseases and such as are liable to become a public charge. Since then there has not been so much hypercriticism in dealing with objections as to form, and if the certificates, signatures, etc., are in substantial conformity to the requirements of the statute, and give reasonable assurance of authenticity, it is sufficient."

Considering the objections seriatim:

(1) The complaint charges the said Grin with wrongfully, unlawfully, and feloniously appropriating and converting to his own use the money of his employer, which had been intrusted to him, and that he "embezzled the same." The word "embezzle" is defined, "To appropriate or divert fraudulently to one's own use, as money or goods intrusted to one's care and control officially or by another." Stand. Dict. The charge thus contains the elements necessary to constitute embezzlement, namely, a breach of trust in respect of money or property in the party's possession, belonging to

another, and the wrongful or fraudulent appropriation thereof to his own use. Reeves v. State, 95 Ala. 31, 11 South. 158. And that the word "embezzle" has a significant meaning, entirely descriptive of the offense, see U. S. v. Lancaster, 2 McLean, 431, Fed. Cas. No. 15,556; U. S. v. Northway, 120 U. S. 327, 334, 7 Sup. Ct. 580, 30 L. Ed. 664. It is not absolutely necessary to follow the exact words of the statute in charging an offense, if words of a similar import are used, and the elements necessary to constitute the offense are fully comprehended therein, and inform the accused of the offense with which he is charged. People v. Potter, 35 Cal. 110; Johnson v. People, 113 Ill. 90; State v. Heaton, 81 N. C. 542; In re Roth (D. C.) 15 Fed. 506; In re Adutt (C. C.) 55 Fed. 376.

(2) The complaint is made upon oath before a United States commissioner, and his seal as such commissioner is attached. Section 5270, Rev. St., does not specify the officers who may administer the oath upon complaints in extradition proceedings, but merely requires that the warrant for the arrest of the alleged fugitive from justice shall not be issued until after the presentation of a complaint, made under oath, charging a crime covered by the extradition treaty. The natural import of such language is that the oath will be sufficient if made before any officer authorized to administer such an oath. By section 19 of the act of May 28, 1896 (29 Stat. 184), United States commissioners are authorized to administer oaths.

(3) That the proceedings should be initiated and carried on by the demanding government is undoubted, but that evidence of special authority from such government to the party making the complaint is necessary is a contention that cannot be upheld. The complaint herein contains the positive statement that it is made by the Russian consul stationed at the city of San Francisco. It recites that criminal proceedings upon the charge alleged have been instituted against the said Grin, that a mandate has been issued from the state department of this government for his surrender upon proper proceedings, and prays that the necessary proceedings may be had as directed in said mandate. The consular title is appended to the signature of the complaining party, and no presumption can arise from any portion of the complaint that it was made other than as and for the Russian government. The cases of In re Herres (C. C.) 33 Fed. 165, and In re Adutt (C. C.) 55 Fed. 376, rightly hold such a showing in a complaint to be amply sufficient for the purposes of the document.

The fourth, fifth, and sixth objections may be considered together. The treaty provides that:

"When the person whose surrender asked shall be merely charged with the commission of an extraditable crime or offense, the application for extradition shall be accompanied by an authenticated copy of the warrant of arrest or of some other equivalent judicial document issued by a judge or a magistrate duly authorized to do so."

Among the documents contained in the record are two orders signed and sealed by the magistrate of the Taganrog circuit court, both dated the 23d day of July, 1901, at Rostov on the Don. The first one stated that:

"The acting examining magistrate of the 4th district of the city of Rostov on the Don, having investigated the preliminary examination in regard to the appropriation by the Cossack of the Province of Poltava, Simeon Grin, of 25,000 roubles belonging to the Broth. Zeefo, finds as follows."

The facts are then stated, at the conclusion of which it is—

"Ordered to arraign, in capacity of accused, pursuant to part 1, art. 1681, of the Penal Code, the Cossack of the province of Poltava, bailiwick of Oposhnia, of Popovka, Simeon Ivanow Grin, 21 years of age (born February 19, 1880), living with a passport issued in the name of a nobleman, Valentine Semashko."

The second order, after reciting the same preliminary statements, finds:

That the said Grin "is arraigned, according to order of this date, in capacity of accused, pursuant to part 1, article 1681, of the Penal Code." That the said Grin, "having committed the crime, being of age, is thus accused of a crime for which, pursuant to paragraph 1, article 389, of the Code of Criminal Procedure, he may be brought up for examination. * * * That in view of the proved fact of embezzlement of a sum over 300 roubles; of the sufficiency of the evidence, as shown in the order of this date in regard to the arraignment of S. Grin, alias V. Semashko, in capacity of the accused, and likewise of the severity of the impending penalty; of the flight after the crime; of the fact that he has not a settled place of residence, pursuant to paragraph 1 of article 416, articles 419, 420, and 421, of the Code of Criminal Procedure,—in regard to S. Grin there can be and must be undertaken his detention in custody upon his examination as the accused: Ordered, pursuant to paragraphs 1, 2, 3, of article 389 of the Code of Criminal Procedure, the Cossack Simeon Ivanow Grin, alias Valentine Semashko, is to be brought to the city of Rostov on the Don, in the province of the Don Army, in order to be placed at the disposition of the examining magistrate of the Taganrog circuit court, of the 4th district of the city of Rostov on the Don."

In these orders are contained all the essentials of the warrant of arrest or other judicial document issued by a judge or magistrate required by the treaty. And that the magistrate making the orders is a duly-authorized official is shown by the certificate of the United States ambassador, stating that the annexed papers, in which the above orders are included, "are properly and legally authenticated so as to entitle them to be received and admitted as evidence for similar purposes by the tribunals of Russia, as required by the act of congress of August 3d, 1882." This certificate is sufficient under the statute, the words "for similar purposes" having been repeatedly construed to mean "as evidence of criminality." In re Henrich, Fed. Cas. No. 6,369; In re Charleston (D. C.) 34 Fed. 531. The words "as evidence," in the certificate herein, objected to by counsel for the petitioner, may therefore be regarded as surplusage, and not as constituting a material variation from the terms of the statute.

It is true that no indictment appears in the record, though it is stated in the record that the said Grin has been indicted in the empire of Russia for the said embezzlement. But the petitioner having been found within the state of California, the law of this state must control this procedure. No indictment is required by that law, and the omission is therefore immaterial.

(7) A statement of the offense with which the fugitive is charged, in general terms, importing that it is an offense within the treaty, is all that is required in the mandate, as it only contemplates a rec-

ognition by the executive that the case is one which comes within the scope of the treaty and calls for judicial investigation. In re Kelly (C. C.) 26 Fed. 852; In re Macdonnell, 11 Blatchf. 79, Fed. Cas. No. 8,771.

Coming now to the main objection urged by counsel for the petitioner to the sufficiency of the evidence produced herein to convict the accused of the crime charged: It is contended that the petitioner is guilty, if at all, of the crime of larceny, and not of embezzlement, and, as the laws of this state will not permit a trial of the offense of larceny upon the charge of embezzlement, upon the showing made the prisoner cannot be held for embezzlement, and should therefore be discharged. This contention is based upon the alleged fact that the money was delivered to the petitioner by his superior to take from the bank to the railway company, and, while in the custody of the petitioner, was really in the lawful possession of the employer; that the appropriation thereof by the said Grin was therefore a taking from the possession of his employer, and was larceny. That was the early rule, when the statutory crime of embezzlement was created to provide for the punishment of those fraudulently converting money or property to their own use which had been intrusted to them. As the element of trespass was wanting, the common-law crime of larceny would not cover the offense, and the offender escaped punishment. The creation of the distinct offense of embezzlement supplied a remedy for this defect in the law, but technical difficulties still frequently arose, owing to the strict construction of the common law of the relationship of master and servant, employer and employé, holding the servant or employé to be merely the extended hand of the master or employer; the possession of the master or employer thereby continuing, even when the custody or control was in the servant or employé, until the interposition of some third party. The line was thus, of necessity, drawn between the cases where property was intrusted to the servant by the master (where the servant was held to have merely the custody, but not possession), and where it was intrusted to the servant by a third party for or on behalf of the master. In the latter case the possession was held to be in the servant, and a conversion of the property by the servant was embezzlement. To overcome the difficulties still existing, and to meet the necessities of larger commercial relations, with the corresponding increase of responsibility upon employés, many states have introduced into their statutes governing embezzlement words indicating that conversion of property merely "in the care or custody" of the employé shall constitute embezzlement; thus taking the crime more definitely and decidedly from the domain of larceny. In California embezzlement is broadly defined as "the fraudulent appropriation of property by a person to whom it has been intrusted." Section 503, Pen. Code. And in section 508 of the Penal Code it is provided that:

"Every clerk, agent, or servant of any person who fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of another which has come into his control or care by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement."

In People v. Gallagher, 100 Cal. 466, 35 Pac. 80, the crime of embezzlement was held to cover a case in which the property fraudulently converted had not been in the possession of the prosecutor. In other states statutes containing similar words to those in the California statute have been construed as extending the crime of embezzlement to circumstances where the property converted had come into the control of the accused from his employers merely by virtue of his employment. In Moore v. U. S., 160 U. S. 268, 16 Sup. Ct. 294, 40 L. Ed. 422, the supreme court of the United States, upon a writ of error to the United States district court for the Southern district of Alabama, defines "embezzlement" as "the fraudulent appropriation of property by a person to whom it has been intrusted, or into whose hands it has lawfully come," and states that "it differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while in larceny the felonious intent must have existed at the time of the taking." The court there holds that an indictment charging embezzlement of property of the government, generally described, without particular identification, would be sufficient if it contained the allegation that the sum embezzled came into the possession of the accused by virtue of his employment. In Ker v. People, 110 Ill. 627, 51 Am. Rep. 706, the English statutes are distinguished from many American statutes in this regard. And in Territory v. Maxwell, 2 N. M. 250, the difference between the statutes of states following the early English rule and those of more modern enactment is clearly shown. The New Mexico statute under consideration was almost identical with the California statute, and in construing it the court said:

"There is no limitation as to the manner of the coming to his possession or under his control, or the person from whom they may so come. This widens the scope of the law very much, and renders the decisions made under the more restrictive language of the older statutes entirely inapplicable. This we could hold from the very nature of the language employed, and the difference obviously made by the omission of the old restrictive clause, without the need of any previous adjudication on the subject."

It is undoubtedly a legislative prerogative to define the crime of embezzlement, and include within its terms such elements as it deems proper. The four distinct propositions of fact to be made out to convict one of this crime under the California statute have been held to be (1) that the party was such a clerk, agent, or servant; (2) that he received the property of his principal; (3) that he received it in the course of his employment; (4) that he converted it to his own use, with intent to steal. Ex parte Hedley, 31 Cal. 108. These elements were all present in the case at bar, and, under the comprehensive wording of the California statute, the petitioner could be convicted of the crime of embezzlement upon the proofs submitted.

There appearing no substantial error in law, and no manifest error in fact, in the proceedings before the commissioner, the writ of habeas corpus will be dismissed, and the petitioner remanded to the authority of the United States marshal, under the commissioner's warrant.