## *In re* HERRES.[1]

*(Circuit Court, D. Minnesota.* December 16, 1887.)

1. EXTRADITION—REQUISITES—PRELIMINARY MANDATE.

    In proceedings for the extradition of a fugitive from justice, a preliminary mandate from the executive department of the government is not necessary under the extradition treaty of 1842, between the United States and Great Britain: the act itself containing no provision to that effect, and because no extradition can be consummated without action by the executive in the last instance.

2. SAME—AUTHORITY FOR PROCEEDINGS—EVIDENCE OF.

    A complaint filed before the United States commissioner for the extradition of an alleged fugitive from justice did not disclose the fact that the proceedings were initiated by the Canadian government, or that the party filing the same was acting other than in his private capacity; but it appeared from the testimony taken before the commissioner that the complaining witness was acting under direct authority from the officials of the Canadian government. *Held,* that it is sufficient if such fact appear elsewhere in the proceedings than in the complaint.

3. SAME—PROOF OF CRIME—MEASURE.

    Depositions for the extradition of an alleged fugitive from justice showed that a forgery had been committed by one John K. Herres, and a witness testified to have seen prisoner in Toronto, where the crime was charged to have been committed. When arrested, prisoner denied his name, claiming it was Walker, but subsequently he swore to and signed an affidavit for change of venue as John K. Herres. On *habeas corpus,* petitioner objected that the evidence failed to show that he was guilty of the offense charged against him in Canada. *Held,* that extradition proceedings are like preliminary examinations, and if it appear that a crime has been committed, and that there is probable reason to believe that the defendant is guilty of that crime, substantial justice requires that he should be put upon trial,

4. SAME—DEPOSITIONS—AUTHENTICATION.

    On *habeas corpus* for the discharge of a prisoner, held under extradition proceedings, it was insisted that the depositions of complaining witness were not properly certified and authenticated. 22 St. U. S. 216, provide that depositions shall be received if they be properly and legally authenticated, so as to be entitled to be received for similar purposes before tribunals of the foreign country from which the accused shall have fled. *Held,* that the authentication was in the very language of the statute, and these depositions were as such entitled to be received for similar purposes.

5. SAME.

    Rev. St. U. S. § 1674, define "vice-consul" as follows: "'Vice-consuls' and 'vice-commercial agents' shall be deemed to denote consular officers who shall be substituted, temporarily, to fill the places of consuls general, consuls, or commercial agents, when they shall be temporarily absent, or relieved from duty." Depositions for the extradition of an alleged fugitive from justice of Ontario, Canada, having been authenticated by the vice-consul of the United States, *held,* that prisoner's claim that a vice-consul is a deputy, and not the principal diplomatic consular officer authorized to authenticate such papers, is unfounded.

Petition for Writ of *Habeas Corpus.* On appeal from the district court.

John Karl Herres, an alleged fugitive from justice of the province of Ontario, in the dominion of Canada, held in custody under extradition proceedings, applied for a writ of *habeas corpus,* upon the return of which

[1] Reversing 32 Fed. Rep. 583.

in the United States district court of Minnesota, a decree was entered discharging the prisoner. See 32 Fed. Rep. 583. From this decree the case is brought to the circuit court.

BREWER, J. I regret to say I am unable to agree with the views taken by the learned judge of the district court; and I will state briefly the views that I entertain, and the reasons therefor.

The first question is whether a preliminary mandate from the executive is essential to extradition proceedings. That question has never been decided by the supreme court. In the *Case of Kaine*, 14 How. 129, the question was before that court, and, of the seven judges, four expressed an opinion one way, and three the other. But that case went off on some other question, and so there never has been a decision. Of course, it would be presuming for me to attempt to review the different opinions given by the judges of that court. I simply state that I hold that a preliminary mandate is unnecessary, and for these reasons: *First.* The act itself makes no express provision for such a mandate. *Second.* No extradition can be consummated without action by the executive in the last instance. It would seem, therefore, superfluous to compel the executive both to initiate and consummate the proceedings. *Third.* The general trend, as I take it, of the decisions in the circuit courts, is against the necessity for such a mandate. *Fourth.* Insisting upon it will oftentimes defeat the very purposes of the extradition, in that the fugitive is warned or notified of the proceeding, and may escape to some other place. So, while it would be presumption on my part to say that there are not cogent reasons on both sides of this question, I think it is the safer and better course to hold that no such preliminary mandate is essential.

The second question is this: The complaint filed before the commissioner does not disclose the fact that the proceedings are initiated by the Canadian government, or that the party filing the affidavit is acting other than in his private capacity as an individual. I doubt not that the proceedings must be initiated and carried on by the foreign government; but it seems to me that, if it appear in the examination before the commissioner, or elsewhere in the proceedings than in the complaint, that it is in reality a proceeding initiated and carried on by the foreign government, that is sufficient. It is a matter of substance, rather than of form, and if it anywhere appear that this is officially undertaken by the foreign government, that ought to be sufficient. It fully appears from the testimony of the complaining witness before the commissioner that he was acting under direct authority from the officials of the Canadian government.

The third question is this: It is insisted that the depositions are not properly certified and authenticated. The old act in that respect as to certification and authentication was changed in 1882, and the new act is found in the twenty-second volume of the Statutes, upon page 216. That provides that depositions shall be received, if they be properly and legally authenticated, so as to be entitled to be received for similar purposes

before tribunals of the foreign country from which the accused shall have escaped. The authentication is in the very language of the statute, and these depositions were, as such, entitled to be received for similar purposes.

The certification is made by the vice-consul, and that is charged as the fourth reason, on the ground that the language of the act names the principal diplomatic consular officer of the United States, and the claim is made that the vice-consul is a deputy, and not a principal officer. Section 1674 of the Revised Statutes does away with that claim, for whatever may be the force of the word "vice" in ordinary parlance, that section defines vice-consul in this language: "'Vice-consuls' and 'vice-commercial agents' shall be deemed to denote consular officers, who shall be substituted, temporarily, to fill the places of consuls general, consuls, or commercial agents, when they shall be temporarily absent, or relieved from duty." In other words, the vice-consul is not a deputy, but an acting consul.

The final objection is that the evidence fails to show that this petitioner was guilty of the offense charged against him in Canada. The depositions show unmistakably that a forgery was committed by one John K. Herres; but as to the identity of this petitioner, they are not so satisfactory. One witness thinks that he once saw him in Toronto. It appears that John K. Herres lived in the community where the crime is charged to have been committed. When arrested, petitioner denied that his name was John K. Herres, and claimed that it was Walker; but afterwards he files an affidavit for a change of venue, which he signs and swears to as John K. Herres. It was said in argument, although I have not the means of verifying this statement, that the signature to that affidavit is so similar to the signature on the forged paper that it is very strong evidence that the two signatures were written by the same person. What I have here is only a copy, and so I am not able to verify that statement. But it is evident that the commissioner had whatever weight that testimony gave before him for consideration. It seems to me that there is enough to justify this court in saying that the party ought to be extradited for trial. Such a proceeding as this in some respects is like a preliminary examination; and if it appear that a crime has been committed, and that there is probable reason to believe that the defendant is guilty of that crime, substantial justice requires that he should be put upon trial.

Finally, I might observe, with reference to these extradition proceedings, that the substance, and not the form, should be the main object of inquiry, and that they should not be conducted in any technical spirit with a view to prevent extradition. While the courts should review the proceedings to see that no extradition is consummated upon a mere pretext, or to subserve private malice, yet, if it appears that a crime has been committed, and probable that the accused has fled to this country for refuge, then a spirit of fairness, expecting that the foreign country will treat extradition proceedings from this country in the same spirit, requires that we act reasonably and justly, having reference more to the substance than to the form of the proceedings. Between govern-

ments, as between individuals, the golden rule is both wise and sound.

Entertaining these views, the judgment of the district court will be reversed, and the petition for *habeas corpus* will be denied.