In re ORPEN.

(Circuit Court, N. D. California. April 11, 1898.)

1. EXTRADITION—EVIDENCE—CERTIFICATE OF DIPLOMATIC OFFICER.
    Where the certificate required by the act of August 3, 1882 (22 Stat. 216), to depositions, warrants, or other papers offered in evidence in extradition cases, is signed by the chargé d'affaires ad interim, the court will take judicial notice that such chargé was, at the time such certificate was given, the principal diplomatic officer of the country where it was given.

2. SAME—REQUISITION AND MANDATE.
    A requisition from the foreign government and mandate from this government are not necessary, under Rev. St. § 5270, to initiate proceedings in extradition before a committing magistrate, and it is sufficient if it appears that the complaining witness is acting for the foreign government.

3. EVIDENCE—DYING DECLARATION.
    It is not necessary that the declarant should have said, in so many words, that she was speaking under a sense of impending death, but it is sufficient if it satisfactorily appears that the dying declaration was made in the knowledge of impending death.

Charles Page, for British consul general.
Wal. J. Tuska, for Orpen.

MORROW, Circuit Judge (sitting as committing magistrate). This is an application by the British consul general at San Francisco, as the representative of the kingdom of Great Britain and Ireland, for the extradition of Arthur Herbert Orpen for the crime of murder alleged to have been committed at Auckland, colony of New Zealand, on December 25, 1897. The application for the apprehension of the accused was made on January 13, 1898. A warrant of arrest was duly issued and served by the United States marshal on January 19, 1898.

Miss Susan Harriet Campbell McCallum died at a private hospital in the city of Auckland, New Zealand, on Saturday night, December 25, 1897. She had been under the care of Dr. Arthur Herbert Orpen. At about 11:30 a. m. of that day Dr. Orpen, in the name of Arthur Herbert, purchased a steerage passage on the steamship Alameda, for San Francisco, and took passage on the vessel under the name of Arthur Herbert. The vessel sailed for San Francisco on the afternoon of December 25, 1897, and arrived in San Francisco, with Dr. Orpen on board, on January 19, 1898. On January 13, Mr. J. W. Warburton, her British majesty's consul

general at San Francisco, made affidavit before me, charging, upon information and belief, that Arthur Herbert Orpen, sometimes known as Arthur Herbert, did, on the 25th day of December, A. D. 1897, at the city Auckland, in the colony of New Zealand, within the dominion and jurisdiction of her Britannic majesty, commit the crime of murder upon Susan Harriet Campbell McCallum, by means to the affiant unknown. It was alleged, in the affidavit, among other things, that the accused was a fugitive from justice, and was seeking an asylum within the territory of the United States; that the facts had been communicated to affiant in part by cable from the chief of police at Wellington in said colony of New Zealand, and in part by telegram from Sir Julian Pauncefote, her Britannic majesty's ambassador extraordinary and plenipotentiary to the United States. Application was made for a warrant of arrest, to be issued for the apprehension of the accused, under the provisions of the treaty between Great Britain and the United States proclaimed November 10, 1842. A warrant was thereupon issued, the accused was arrested, and held to await the arrival of the evidence tending to establish his guilt. The identity of the prisoner is admitted.

In support of the complaint, certain papers were presented and admitted in evidence provisionally, subject to objections which were to be further considered. It is objected that these papers have not been certified so as to entitle them to be admitted in evidence. The certificate is as follows:

"American Embassy, London, February 25, 1898.

"I, Henry White, chargé d'affaires ad interim of the United States of America, hereby certify that the annexed papers, being copies of the warrant of arrest and the information and depositions and exhibit upon which the said warrant was granted, proposed to be used upon an application for the extradition from the United States of Arthur Herbert Orpen, charged with the crime of murder, alleged to have been committed in the British colony of New Zealand, are properly and legally authenticated, so as to entitle them to be received in evidence for similar purposes by the tribunals of Great Britain and her colonies, as required by the act of congress of August 3, 1882. And I further certify that the signature 'F. H. Villiers,' on the page numbered (2) of these documents, at the foot thereof, is the proper handwriting of the Hon. F. H. Villiers, one of the assistant undersecretaries of state for the foreign affairs of her Britannic majesty.

"In witness whereof I hereto sign my name and cause the seal of this embassy to be affixed this 25th day of February, 1898.

"[Seal.] Henry White,
"Chargé d'Affaires Ad Interim of the United States to Great Britain."

## Section 5 of the act of August 3, 1882, provides as follows:

"That in all cases where any depositions, warrants, or other papers or copies thereof shall be offered in evidence upon the hearing of any extradition case under title sixty-six of the Revised Statutes of the United States, such depositions, warrants, and other papers, or the copies thereof, shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that any deposition, warrant or other paper or copies thereof, so offered, are authenticated in the manner required by this act." 22 Stat. 216.

It is objected that the certificate of Henry White, chargé d'affaires ad interim of the United States to Great Britain, is not the certificate of the principal diplomatic or consular officer of the United States, resident in such foreign country. I am of the opinion that this objection is covered by the decision of Judge Brewer in Re Herres, 33 Fed. 165, where the court took judicial notice that a vice consul, who was temporarily filling the place of the consul, was the principal consular officer of the United States in the province of Ontario, in the dominion of Canada. The same rule would authorize me to take judicial notice that Henry White was, on the 25th day of February, 1898, the principal diplomatic officer in London. But whatever doubt I may have had on this subject has been removed by the following certificate received by telegraph from the secretary of state at Washington:

"Washington, D. C., April 9th, 1898.

"Hon. W. W. Morrow, Circuit Judge of the U. S., San Francisco, Cal.: In the matter of the extradition case of Arthur Herbert Orphen, alias Arthur Orpen, now before you, I have the honor to inform you, at the instance of the British ambassador here, that on February twenty-fifth, 1898, Mr. Henry White was chargé d'affaires ad interim of the United States in London, and was the principal diplomatic officer of the United States resident in Great Britain on that day.                                                                Sherman."

It is further objected that no requisition has been made upon this government by the British government for the return of the accused, and no mandate has been issued by this government as a foundation for the present proceedings. The requisition and mandate are not required preliminarily by section 5270 of the Revised Statutes. In the case of In re Herres, supra, this question was considered, and it was held that a preliminary mandate was unnecessary to initiate proceedings before the committing magistrate, and it was sufficient if it appeared by the proceedings that the complaining witness was acting for the foreign government. To the same effect are In re Mineau, 45 Fed. 189, and In re Adutt, 55 Fed. 376, and the proceedings in Benson v. McMahon, 127 U. S. 457, 8 Sup. Ct. 1240. In the present case it sufficiently appears that the consul general is acting for and on behalf of the British government in prosecuting the complaint against the accused.

The next objection is that it does not appear, from the testimony submitted by the British government, that the crime of murder has been committed as charged, or that there is probable cause for believing that the prisoner committed such crime. It appears that the accused has been for a number of years a practicing physician at Auckland, New Zealand. On the afternoon of Wednesday, December 22, 1897, he called at a private hospital in that city, and stated to a Miss Ogilvie, in charge of the hospital, that he had a female patient that he was going to send to the hospital at 8 o'clock that night, and asked that she be received. The patient was Miss Susan Harriet Campbell McCallum. The doctor said the patient had gastritis, and that he wanted her carefully nursed. He said that where she was she had improper diet. Some one had given her strong tea, which had caused her to vomit, and that was the reason he wanted her removed. The patient was received at

the hospital that night. The next day, Thursday, December 23d, Dr. Orpen visited his patient at the hospital between 9 and 10 o'clock in the morning, in the afternoon about 3 o'clock, and again at about 9 o'clock in the evening. At the first visit, the doctor examined the womb of his patient. She was in a very bad condition, very weak, vomiting, suffering great pain, general abdominal pain, temperature abnormal, and very cold and clammy. When the doctor called in the afternoon he was accompanied by Dr. Purchas, and the patient was again examined. Dr. Orpen called alone in the evening and twice the next day, first at about 9 or 10 o'clock in the morning, and the last time in the evening about 9 o'clock. On this last visit he asked Miss Ogilvie what she thought of the case, and she replied that she thought that she was going to die. The doctor said, "So do I." The doctor did not return to the hospital and did not again see his patient. She died on the following night. Between the last visit of the doctor and the death of Miss McCallum, Dr. Orpen left Auckland hurriedly on the steamer Alameda for San Francisco. The post mortem examination of the body of the deceased disclosed the fact that Miss McCallum died from general peritonitis, following the effects of a wound inflicted in the uterus. The medical testimony was to the effect that the wound should not have been there under any legitimate treatment. The inference to be drawn from this fact is that a criminal abortion had been committed upon the young lady, which was the cause of her death, and the association of Dr. Orpen with the case, and his peculiar conduct in connection therewith, indicate that he performed the operation.

A document entitled, "The Deposition of Susan Harriet Campbell McCallum, taken at the private hospital, Hepburn street, Auckland, when the deponent is lying dangerously ill," is a part of the record in the case. It is objected, on behalf of the accused, that this document is not admissible in evidence—First, because it is not a deposition taken in any legal proceeding pending at the time it was taken; and, second, because it cannot be admitted as a dying statement. I am of the opinion that any paper certified as required by section 5 of the act of August 3, 1882, is necessarily admissible in evidence. In re Wadge, 21 Blatchf. 300, 16 Fed. 332; In re Breen, 73 Fed. 458. The weight and effect to be given to the evidence are for the magistrate to determine under the law of the state where the examination is being held.

The statement of the deceased is as follows:

"My name is Susan Harriet Campbell McCallum. I am a single woman. I am known here as Mrs. Sparks. My birthplace is Port Chalmers. It is about twelve months since I went to live with Mrs. Steele, at Remuera. After that I was at Smith's, of Avondale. Latterly I have been living at Mrs. Basten's, in Vincent street, Auckland. Then I went to live with Mrs. Allworthy, housekeeper to Mr. Reid, of Motutapu. I have been lodging with Mrs. Metcalfe in Haven street, Auckland, for about the last three months. I saw Dr. Orpen about two months ago. He gave me some pills. I took them twice a day for about a week. They had no effect. I did this because I believed I was in the family way. I went to Dr. Orpen again. He put me on a couch, and passed an instrument into me. After that I felt as if I were going to faint. I walked home. This operation was performed by Dr. Orpen at his office at Coombe's

Arcade, Queen street. The Saturday before last I had a miscarriage. That would be on the 11th of December. The operation was performed on the previous Thursday, the 9th December. I was very ill on the 11th December. Dr. Orpen came to see me at Haven street on the following Monday, the 13th December, and has been to see me every day since,—sometimes twice a day. I was admitted here on Wednesday last, the 22d December, at 8 p. m. Dr. Orpen came to see me here yesterday twice. He came at 10 in the morning, and in the afternoon met Dr. Purchas here. Dr. Orpen has been to see me here three times to-day. Dr. Purchas has also been to see me to-day. If anything happens to me, will you communicate with my father, who is the harbor master at Dunedin? I would like my body to be sent home. I am making this statement because I think it probable that I may die soon. I have some money in the Auckland Savings Bank, and Mrs. Metcalfe has my book. My father will settle any expenses.

Her
"Susan Harriet Campbell X McCallum.
mark
"Taken and sworn this twenty-fourth day of December, 1897, at midnight, the deponent making her mark, being too weak to sign her name.
"Before me, [Signed] Albert J. Allom,
"A Justice of the Peace for the Colony of New Zealand."

It is objected that it does not appear from this statement that the deceased was under a sense of impending death at the time she made the statement. The rule, as stated in Tayl. Ev. § 718, is that it is not "necessary that the declarant should have expressly said, in so many words, that he. was speaking under a sense of impending death. It will be enough if it satifactorily appears, in any mode, that the declarations were really made under that sanction; as, for instance, if that fact can be reasonably inferred from the evident danger of the declarant, or from the opinions of the medical or other attendants stated to him, or from his conduct, such as settling his affairs, taking leave of his relations and friends, giving directions respecting his funeral, receiving extreme unction, or the like. In short, all the circumstances of the case may be resorted to, in order to ascertain the state of the declarant's mind." From all the surrounding circumstances, and from the statement itself, I am of the opinion that the statement was made in the knowledge of impending death, and that it should be received as a dying declaration tending to establish the guilt of the accused. It follows that the evidence is sufficient to warrant me in believing that the crime of murder was committed as charged in the complaint, and that the accused is guilty of the offense. The proper certificate will be prepared.