## PRESIDENT OF THE UNITED STATES ex rel. CAPUTO v. KELLY, United States Marshal, et al.

### No. 116.

Circuit Court of Appeals, Second Circuit.

Nov. 8, 1937.

Lewis Landes, of New York City (Julius I. Puente, of New York City, of counsel), for the United States.

Davis, Polk, Wardwell, Gardiner & Reed, of New York City (Theodore Kiendl and A. S. Edmonds, both of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

The judgment appealed from denied the relator release from the custody of the United States marshal who held him for extradition to France pursuant to orders of arrest and commitment issued by a United States commissioner.

The first ground urged for reversal is that the complaint in the extradition proceedings was made by a person unauthorized to represent the French government. This objection was neither taken before the commissioner who conducted the hearings, nor presented to the District Judge in the habeas corpus proceedings, nor mentioned in the assignment of errors to the judgment appealed from. It is obviously an afterthought of counsel interposed for the purpose of delaying extradition of the relator. In the opinion of a majority of the court it is without substantial basis either in fact or in law.

The complaint was made by Rene Tanquerey and alleges that he is the assistant consul general of the French Republic in the City of New York, and is acting for and on behalf of the French government pursuant to authority delegated to him by the French consul general; that the affiant has received a letter from the Embassy of the French Republic at Washington, D. C. requesting the arrest and detention of Gennaro Caputo as a fugitive from French justice, and that annexed to said letter was a document signed by the Assistant Secretary of State of the United States directed to peace officers throughout the United States and reciting the request of the French government for the apprehension of said fugitive. These sworn allegations, which were in no way questioned or contradicted, make it perfectly clear that as a matter of fact the complaint was filed with the approval and authority of the French government.

 The legal question, assuming that it is before us, although not presented below nor mentioned in the assignment of errors, is whether the French government may, under its treaty with the United States and the statutory provisions governing extradition proceedings, act in such proceedings through an assistant consul general. Section 3 of the Extradition Convention with France (Senate Document No. 348, 67th Cong. 4th Session, p. 2582) provides that requisitions for the surrender of fugitives from justice shall be made by diplomatic agents or in their absence by consular officers. Requisitions for surrender of fugitives are addressed to the executive, not the judicial, branch of the government. A requisition from the demanding state need not be produced before the Commissioner (Grin v. Shine, 187 U.S. 181, 194, 23 S. Ct. 98, 47 L.Ed. 130), and the treaty provisions as to what officers may make such a requisition have no bearing on who may initiate judicial proceedings. Section 5270 of the Revised Statutes (18 U.S.C.A. § 651) provides that the judicial officers therein specified may act "upon complaint made under oath." It does not state who shall make the oath. Judge Brewer, who later became a justice of the Supreme Court, had this question before him in the case of In re Kelly, 26 F. 852, 856 (C.C. Minn.). There the complaint was made by a citizen and resident of British Columbia and alleged that he was acting pursuant to instructions of the government of the Dominion of Canada and the attorney general of British Columbia. It was held that "It is enough if any person duly authorized appear in behalf of that government and make complaint," and whether the party complaining is so authorized is a question of fact to be inquired into before the Commissioner. To the same effect is In re Herres, 33 F. 165, 166 (C.C.Minn.). In Ex parte Sternaman, 77 F. 595 (D.C.S. D.N.Y.), a complaint made by the chief inspector of the criminal investigation department of Ontario was held sufficient. In the case of In re Ferrelle, 28 F. 878, at page 879 (C.C.S.D.N.Y.), the question of authority was decided adversely to the party making the complaint, but Judge Brown said:

"Generally, complaints of this character have been made under the clear authority or sanction of the executive of the foreign government,—ordinarily through their consuls; sometimes directly upon papers sworn to by the foreign officers representing the executive. I should be inclined to hold that at any time while the proceeding is pending before the commissioner proof might be produced to show that the persons who initiated the proceedings were really acting in behalf of the foreign government, and that their action was sanctioned, ratified, and adopted by the executive."

The appellant relies upon a statement in Grin v. Shine, 187 U.S. 181, 193, 23 S.Ct. 98, 103, 47 L.Ed. 130, that the complaint "may be made by any person acting under the authority of the foreign government having knowledge of the facts, or, in the absence of such person, by the official representative of the foreign government, based upon depositions in his possession." In this case the complaining party was the Russian consul, and it was held that no evidence was required that he had authority to make the complaint. In so far as the above-quoted sentence might be read as expressing the view that no person except the official representative of the foreign government may swear to the complaint unless he has personal knowledge of the facts, the remark is at best a bare dictum. We cannot construe the opinion as a whole as expressing even a dictum to that effect. On the following page (187 U.S. page 194, 23 S.Ct. 103), after reciting that it appears by a certificate of the Acting Secretary of State that application for the arrest of Grin was made in due

form by the chargé d'affaires of Russia accredited to this government, the opinion continues: "This, however, was entirely independent of the proceedings before the magistrate, *which might have been instituted by any person making a complaint under oath and acting by the permission or authority of the Russian government.*" (Italics supplied.)

 This statement counteracts any contrary inference which might be drawn from the earlier sentence upon which the appellant relies. It is in exact accord with the view Justice Brewer, who participated in the decision of Grin v. Shine, had expressed, when a Circuit Judge, in Re Kelly, supra. In our opinion it expresses the only reasonable view. Extradition proceedings must be prosecuted by the foreign government in the public interest, and may not be used by a private party for private vengeance or personal purposes; but if in fact the foreign government initiates the proceedings, no reason is apparent why it may not authorize any person to make oath to the complaint on its behalf. Therefore, we cannot accept the appellant's contention that a complaint based on information and belief must be sworn to by a consular officer.

 With respect to the remaining contentions, it will suffice to say that we have given them careful consideration and are of opinion that none has sufficient merit to require discussion in this opinion. Whether prosecution in France is barred by a statute of limitations is a question not before us, since no proof was made of the French law on that subject.

Judgment affirmed.

MANTON, Circuit Judge (dissenting).

The order entered denied a discharge to the appellant on a writ of habeas corpus from the custody of the United States marshal who holds him in pursuance of an order of arrest issued by the United States Commissioner upon complaint of one Rene Tanquerey, who describes himself as "assistant consul general" of the French Republic in the City of New York, acting under authority delegated to him by the French consul general. He charges appellant with offenses admittedly within the existing extradition convention between the United States and France.

There are several reasons urged by the appellant for reversal of the order. For our present purposes, only one need be considered. The appellant contends that Mr. Tanquerey has not, in fact, been recognized by our government as a consular officer of France, for which he purports to act, and that therefore he is not an official representative of the French government. If there is substance in this objection, it voids the extradition proceedings initiated by Mr. Tanquerey and the proceeding itself must fall.

The Extradition Convention between the United States and the Republic of France proclaimed as of January 26, 1911, provides: "The government of the United States and the government of France mutually agree to deliver up persons who, having been charged with or convicted of any of the crimes or offenses specified in the following article, committed within the jurisdiction of one of the contracting parties, shall seek an asylum or be found within the territories of the other; provided that this shall be only done upon such evidence of criminality as, according to the laws of the place where the fugitive or person so charged shall be found, would justify his or her apprehension and committment for trial if the crime or offense had been there committed."

An extradition is granted for "murder, assassination, parricide, infanticide and poisoning; manslaughter when involuntary; assault with intent to commit murder." Article 3 of the Extradition Convention on which this demand is based provides: "Requisitions for the surrender of fugitives from justice shall be made by diplomatic agents of the contracting parties, or, in the absence of these from the country or its seat of government, they may be made by the consular officers."

Article 4 provides: "In the United States, the application for the arrest and detention shall be addressed to the Secretary of State, who shall deliver a warrant certifying that application is regularly made and requesting the competent authorities to take action thereon in conformity to statute."

Evidently the case before us was regarded by the French government as an urgent one, because the application for the arrest and detention of the appellant was addressed directly to the Commissioner in conformity to section 5270 of the Revised Statutes. The Extradition Act, Rev.St. § 5270, 31 Stat. 656, U.S.C.A. title 18, § 651, provides:

"Whenever there is a treaty or convention for extradition between the Government of the United States and any foreign government, any justice of the Supreme Court, circuit judge, district judge, or commissioner, authorized so to do by any of the courts of the United States * * * may, upon complaint made under oath, charging any person found within the limits of any State, * * * with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or commissioner, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the *proper authorities of such foreign government,* for the surrender of such person."

Since the Extradition Convention and the statutes are in pari materia, they must be construed together, so that the official representatives contemplated by the statute must be those mentioned in the convention; namely, diplomatic agents and consular officers.

In Grin v. Shine, 187 U.S. 181, 193, 23 S.Ct. 98, 103, 47 L.Ed. 130, the Supreme Court in construing that section said: "All that is required by section 5270 [18 U.S.C. A. § 651] is that a complaint shall be made under oath. It may be made by any person acting under the authority of the foreign government having knowledge of the facts, or, in the absence of such person, by *the official representative of the foreign government,* based upon depositions in his possession."

From this record Mr. Tanquerey had no knowledge of the facts, because he bases the complaint on information and belief. He commenced this proceeding as an alleged official representative of the French government. The question therefore is: Who are entitled to be considered as the official representatives of that government? Article 3 of the Extradition Convention of 1911 quoted above mentions only diplomatic agents and consular officers. To determine who are consular officers within the scope of this article, we must refer to the Consular Convention of 1853 between the two countries. Article 1 provides: "The consul generals, consuls, vice consuls or consular generals of the United States and France shall be reciprocally received and recognized on the presentation of their commissions in the form established in their respective countries. The necessary ex equatur for the exercise of their functions shall be furnished to them without charge; and on the exhibition of this ex equatur they shall be admitted at once, and without difficulty by the territorial authorities, federal or state, judicial or executive, of the ports, cities and place of their residence and district to the enjoyment of the prerogatives reciprocally granted."

An assistant consul general is clearly not within the classification of the treaty, and there is nothing in this record to indicate that he has pleaded the receipt of and exhibited the ex equatur as a condition to the "enjoyment of the prerogatives reciprocally granted." Savie v. City of New York, 118 Misc. 156, 193 N.Y.S. 577. Moreover, a communication from the Department of State dated February 13, 1937, to counsel for the appellant says that: "While the department has ascertained informally that Mr. Tanquerey is a duly appointed consul of France at New York, no request has been made of this government for his recognition." Mr. Tanquerey is not, in the absence of such recognition, a consular officer of France within the meaning of article 3 of the Extradition Convention of 1909 and of article 1 of the Consular Convention of 1853, and is not, therefore, an official representative of that government in the sense of section 5270 of the Revised Statutes (18 U.S.C.A. § 651). The fact that Mr. Tanquerey acted upon authority delegated to him by the consul general cannot avail appellee because we are of opinion that, independently of a treaty or legislation of the admitting state, consular functions cannot be delegated. The official character of the consular office; the personal elements entering into the selection; the appointment and admission of the person as consul; the need of a standard of certainty in arriving at governmental or personal responsibilities— these basic factors and others argue strongly against the delegability of the official functions of the consular office to persons without an official status recognized by the admitting state. Oppenheim (1 Int.Law,

4th Ed. [1928] p. 657) says there are four classes of consuls generally distinguished according to rank: Consuls general, consuls, vice consuls, and agents consular. Since assistant consul general is an official unknown in international law, Mr. Tanquerey was bound to plead and show that he was recognized by our executive department in order to invest him with an official consular character. Savie v. City of New York, 118 Misc. 156, 158, 193 N.Y.S. 577. Mr. Tanquerey's status must therefore be considered as in the light of a private individual, and in that capacity it was incumbent upon him to show at some stage of the case that the proceedings were initiated on behalf of the French government. In Re Herres (C.C.) 33 F. 165, 166, the court said:

"I doubt not that the proceedings must be initiated and carried on by the foreign government; but it seems to me that, if it appear in the examination before the commissioner, or *elsewhere in the proceedings than in the complaint,* that it is in reality a proceeding initiated and carried on by the foreign government, that is sufficient. It is a matter of substance, rather than of form, and if it anywhere appear that this is officially undertaken by the foreign government, that ought to be sufficient."

Nowhere "in the examination before the Commissioner or elsewhere in the proceedings than in the complaint" does it appear that this extradition proceeding was initiated and carried on by the French government. In the absence of such showing, Tanquerey must be regarded as without authority in the premises. As stated in Re Extradition of Ferrelle (C.C.) 28 F. 878, 879: "The commissioner or other officer has jurisdiction to proceed 'upon complaint made under oath.' That means upon a 'complaint, under oath,' in behalf of the foreign government that is authorized by the existing treaty to have the surrender made. * * * The act was not intended to give a private person the authority to institute a proceeding upon his own option merely; and it would be a great hardship if that construction were given to it." See, also, Commonwealth ex rel. Short v. Deacon, 10 Serg. & R. (Pa.) 125.

A very serious question of the bar of the statute of limitations under the French law was argued. To be sure, it is based on the law of France which can be proved and established in a new proceeding, when commenced by the proper authorities. If the right to prosecute in France has been barred by time limitation, that is a good defense to the extradition proceedings and might justify a denial of extradition. The appellant is not required to await his trial in France to present this defense.

The order should be reversed.