UNITED STATES of America ex rel.
Branko KARADZOLE, Consul General,
Federal People's Republic of Yugo-
slavia, Complainant,

v.

Andrija ARTUKOVIC, Defendant.

No. 9.

United States District Court
S. D. California,
Central Division.

Jan. 15, 1959.

George E. Danielson, Los Angeles, Cal., for plaintiff.

O'Connor & O'Connor, Vincent G. Arnerich, Los Angeles, Cal., Robert T. Reynolds, Washington, D. C., for defendant.

THEODORE HOCKE, United States Commissioner.

First I want to compliment counsel for the courteous and competent manner in which this case was presented. Tension was high during the hearings and it would have been excusable if counsel had absorbed some of it. They maintained the decorum expected of them at all times and the respect due their opponent.

The briefs were necessarily voluminous. They show the industry and competency of the attorneys. I think I have read every case on extradition which is even remotely similar to any aspect of this case. No party could have received better representation.

The above entitled cause is now under submission for decision upon the amended complaint on extradition filed by the complainant's predecessor on October 15, 1951, based upon an indictment entitled in the People's Republic of Croatia, Presidency of the County Court, Zagreb, received on September 5, 1951. The amended complaint is in twenty-two counts charging the defendant with murder and with participation in murder during the period from April 16, 1941, to October 10, 1942, during which time the defendant was the Minister of Internal Affairs in the Independent State of Croatia.

Hearing on the amended complaint was commenced on June 16, 1958, and completed on July 8, 1958, at which time the matter was taken under submission on briefs to be filed by the parties.

The briefs have now been filed and duly considered. The evidence submitted

by both sides has been read and reread, together with the authorities submitted by the parties.

Considerable time has elapsed between the filing of the complaint on August 29, 1951, and the start of the extradition hearing on June 16, 1958. For the benefit of anyone not familiar with the history of this case I believe an explanation is in order. Chronologically the following steps were taken:

August 29, 1951—Complaint for Extradition filed with the Commissioner, warrant issued. The defendant was arrested on the warrant and arraigned on the complaint. The defendant was committed to the custody of the United States Marshal without bail.

September 10, 1951—Motion to fix bail was heard by the Commissioner and denied. Extradition hearing was set for October 22, 1951.

September 12, 1951—Petition for Writ of Habeas Corpus was filed by the defendant in the United States District Court for the Southern District of California and Order to Show Cause why the writ should not be granted was issued. Artukovic v. Boyle, infra.

September 14, 1951—Return to Order to Show Cause was filed by the United States Marshal in the District Court.

September 17, 1951—Appearance of Rafo Ivancevic, Consul General of the Federal People's Republic of Yugoslavia, was filed in the District Court.

September 19, 1951—Amended Petition for Writ of Habeas Corpus was filed in the District Court and, after hearing, bail was fixed in the sum of $50,000 and a date set for hearing on the petition.

September 20, 1951—Bond was posted and the defendant released from custody.

October 15, 1951—Amended Complaint for Extradition filed with the commissioner.

October 22, 1951—Extradition hearing continued by the commissioner to October 24, 1951.

October 24, 1951—Evidence of criminality filed with the commissioner. Extradition hearing again continued for re-setting for hearing because of the Habeas Corpus proceeding.

From time to time thereafter continuances were granted until July 14, 1952, at which time the matter was placed off calendar for setting of an extradition hearing until final disposition of the Habeas Corpus proceeding.

July 14, 1952—Petition for Habeas Corpus was granted, the District Court holding there was no existing treaty between the United States of America and the Federal People's Republic of Yugoslavia (Artukovic v. Boyle, D.C.1952, 107 F.Supp. 11). The defendant was released on bail pending appeal from that judgment.

February 19, 1954—The United States Court of Appeals for the Ninth Circuit in Ivancevic v. Artukovic, 211 F.2d 565, certiorari denied 348 U.S. 818, 75 S.Ct. 28, 99 L.Ed. 698, rehearing denied 348 U.S. 889, 75 S.Ct. 202, 99 L.Ed. 698, reversed the District Court, holding the treaty between the United States and Servia in 1902 was a present, valid and effective treaty between the United States and the Federal People's Republic of Yugoslavia.

April 3, 1956—The District Court in the Habeas Corpus proceeding held that the offenses for which the surrender of the defendant was sought were of a political character and therefore not extraditable under the treaty. Artukovic v. Boyle, D.C.1956, 140 F.Supp. 245.

March 10, 1958—Mandate of the United States Supreme Court was filed in the District Court vacating the judgment of the United States Court of Appeals affirming the judgment of the District Court (Karadzole v. Artukovic, 9 Cir., 1957, 247 F.2d 198) and remanding the matter for a hearing pursuant to 18 U.S. C. § 3184. Karadzole v. Artukovic, 1958, 355 U.S. 393, 78 S.Ct. 381, 2 L.Ed.2d 356.

March 10, 1958—The parties appeared before me and June 16, 1958, was set for the commencement of the extradition hearing pursuant to 18 U.S.C. § 3184.

June 16, 1958–July 8, 1958—Extradition hearing was held and the matter taken under submission on briefs to be filed.

The above is set forth to show that any delay in the hearing of the extradition proceeding was caused by the defendant's filing of the petition for Habeas Corpus and was not the fault of the commissioner. My predecessor had set an early hearing and I am sure would have held an early hearing but for the Habeas Corpus proceeding.

### Motions

Several motions were made during the hearing which should receive attention before the merits of the complaint are considered.

■ The first motion is made by defendant to strike the exhibits which were presented after the two month period following the arrest of the defendant on August 29, 1951. The demand for extradition is based upon the treaty between the United States of America and the Kingdom of Servia concluded October 25, 1901, and proclaimed May 17, 1902 (Exhibit No. 131) 32 Stat. 1890, and the statutes of the United States pertaining to extradition—Title 18 U.S.C. §§ 3181–3195. This treaty has been held to be in full force and effect between the United States of America and the present Federal People's Republic of Yugoslavia by the United States Court of Appeals for the Ninth Circuit in Ivancevic v. Artukovic (9 Cir., 1954), supra.

Article IV of this treaty provides:

"The provisional detention of a fugitive shall cease and the prisoner [shall] be released if a formal requisition for his surrender, *accompanied by the necessary evidence of criminality,* has not been produced under the stipulations of this Treaty, *within two months from the date of his provisional arrest and detention."*

The original complaint was filed with my predecessor on August 29, 1951, on which date the defendant was arrested on the commissioner's warrant and arraigned on the complaint.

On October 24, 1951, within two months of the arrest and provisional detention, the complainant filed approximately ninety documents which it contends meets the requirements of the treaty.

On June 6, 1958, ten days before the date set for the hearing on the amended complaint, complainant filed a number of additional documents in support of its complaint. It is to these documents that defendant now directs his motion to strike.

Counsel indicate they have been unable to find any court decision construing such a treaty provision and my research has disclosed no such case.

I must hold that the treaty means just what it says, i. e.: The *provisional detention* of the fugitive shall cease and the prisoner released if the necessary papers are not on file within two months. Here we do not have this situation. The defendant was released on bail in the Habeas Corpus action on September 20, 1951, long before the two months from the date of his provisional arrest and detention. The treaty does not provide that all proceedings shall cease, merely that any detention shall cease. His release for failure to furnish the necessary evidence of criminality would not be res judicata. A hearing could still be held or a new complaint could be filed, a new warrant issued, and another provisional detention, starting anew the time for filing the necessary evidence.

Therefore, the motion to strike these exhibits is denied and they are admitted into evidence.

I cannot condone the action of the complainant in waiting until June of 1958 to file these additional documents. The documents themselves indicate they were obtained early in 1952. They should have been filed as soon thereafter as possible to enable the defendant to obtain evidence to refute them. However, defendant could have obtained relief by a motion to continue the hearing to a later

date, if he had been so inclined, in order to obtain his evidence. No such motion was made.

■■ The next motion is to strike all exhibits offered by the complainant on the grounds they do not comply with the code sections pertaining to the evidence required at the hearing.

Title 18 U.S.C. § 3190 provides:

"Depositions, warrants, or other papers or copies thereof offered in evidence upon the hearing of any extradition case shall be received and admitted as evidence on such hearing for all the purposes of such hearing if they shall be properly and legally authenticated so as to entitle them to be received for similar purposes by the tribunals of the foreign country from which the accused party shall have escaped, and the certificate of the principal diplomatic or consular officer of the United States resident in such foreign country shall be proof that the same, so offered, are authenticated in the manner required."

Defendant's chief objection is that the documents offered are not depositions as that term is defined in the California codes. Depositions, as we understand that term, are taken upon notice and the witnesses are subject to cross-examination. But Section 3190 does not limit the evidence to depositions. It provides for "other papers or copies thereof" provided they are properly authenticated.

All documents from Yugoslavia filed as exhibits are authenticated by the American Foreign Service as "properly and legally authenticated so as to entitle them to be received in evidence for similar purposes by the tribunals of the Federal People's Republic of Yugoslavia as required by the Act of Congress of August 3, 1882", the act of Congress upon which Section 3190 is based. (Reviser's Note. —Based on Title 18, U.S.C. 1940 ed. § 655; R.S. § 5271; Aug. 3, 1882, Ch. 378, § 5, 22 Stat. 216. Unnecessary words were deleted.)

The courts have been very lenient in admission of evidence in extradition cases. Practically any document *properly authenticated* has been received in evidence. Even unsworn documents have been admitted. The test has been whethed the document is properly authenticated. See, for example: Elias v. Ramirez, 1910, 215 U.S. 398, 409, 30 S.Ct. 131, 54 L.Ed. 253, 257; Ex parte Schorer, D.C.Wis.1912, 197 F. 67, 72; In re Orpen, C.C.Cal.1898, 86 F. 760, 761; Cleugh v. Strakosch, 9 Cir., 1940, 109 F.2d 330, 333–334; Desmond v. Eggers, 9 Cir., 1927, 18 F.2d 503, 504; Grin v. Shine, 1902, 187 U.S. 181, 193, 23 S.Ct. 98, 47 L.Ed. 130.

Section 3190 provides for depositions or other papers or copies thereof when properly authenticated. Certainly this would include affidavits.

Therefore, the motion to strike is denied.

The next motion made by defendant is to strike all of the exhibits of a testimonial nature on the ground that they are incompetent and hearsay. This motion has merit. Counsel and I agree that portions of the affidavits are not competent evidence. I have placed upon counsel the burden of citing in their briefs the evidence they consider competent. The evidence cited by them as competent will be considered later upon the merits.

The motion to strike will be denied.

The last motion made by defendant is to strike all evidence on the ground that the Federal People's Republic of Yugoslavia is not the proper demanding government as the crimes, if any, were not committed within its jurisdiction. The indictment charges that the offenses were committed between April 16, 1941, and October 10, 1942. At that time there was no Federal People's Republic of Yugoslavia. There was Yugoslavia and an Independent State of Croatia which was set up when the Germans and Italians attacked Yugoslavia on April 6, 1941. Even the indictment upon which the complaint on extradition is based states: "in the course of 1941 and 1942, when Yugoslavia was occupied by German and Italian troops" the defendant did commit the offenses charged.

At the time the Indictment was filed the County Public Prosecutor for the city of Zagreb testified "It undoubtedly appears from the evidence that during 1941 and 1942, when Yugoslavia was under the occupation by German and Italian troops and civil authority was non-existent, the accused was one of the leaders of the band of brigands who terrorized a large portion of Yugoslavia * * *". (Ex. 85.)

There are several cases holding that offenses committed during a period of occupation are answerable to the armies of the occupation and not to another country or state. See, for example: Coleman v. State of Tennessee, 97 U.S. 509, 24 L. Ed. 1118; In re Lo Dolce, D.C., 106 F. Supp. 455.

In view of my findings on the merits I do not believe it is necessary to determine whether the complainant is the proper demanding government as it is the only one now existing which could possibly make the demand. The armies of the occupation have long since ceased to exist through action of the allied armies in World War II.

The above cases refer to a fugitive who at the time of the offense charged was a member of the armed forces.

I prefer to decide this case on the merits. The motion is denied.

Complainant makes a motion to exclude Defendants Exhibits "H" and "I" for identification into evidence on the ground they are incompetent under Oteiza y Cortes v. Jacobus, 1890, 136 U.S. 330, 336-337, 10 S.Ct. 1031, 34 L.Ed. 464, 467, being ex parte affidavits which cannot be received on behalf of an accused. If the matter came before the Supreme Court again under our modern concepts it might be the Supreme Court would change its mind. However, I am bound by the above decision and the two exhibits will not be received in evidence.

Complainant also moves to strike portions of the testimony of Rene Hermann, Stjepan Lackovic and Theodore Benkovik on the ground it relates to times long before or long after the times of the offenses charged and is too remote to have any materiality or relevancy to the issues presented. Some of this evidence was received on the issue of political character of the offenses charged. On this issue I think evidence is admissible going back several years to show the background of the offenses charged and for a time after the charges to show a continuance of the same situation.

As to the testimony of Stjepan Lackovic from page 419 line 23 through page 424 line 13 the motion is granted. In all other respects the motion is denied.

### Probable Cause To Believe Defendant Is Guilty Of The Crimes Of Murder And Participation In Murder.

The Supreme Court of the United States in Collins v. Loisel, 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956, laid down the rule to be followed in extradition cases. That court held;

It is not the *function* of the committing magistrate in foreign extradition proceedings to determine whether or not the accused is guilty, but merely to decide whether or not there is *competent* evidence which according to the law of the surrendering state would justify his apprehension and commitment for trial if the crime had been committed in that state.

The law to be applied is therefore the laws of California. See for example: Cleugh v. Strakosch, 9 Cir., 1940, 109 F. 2d 330, 333; Charlton v. Kelly, 1913, 229 U.S. 447, 457, 33 S.Ct. 945, 57 L.Ed. 1274; Curreri v. Vice, 9 Cir., 1935, 77 F.2d 130.

The United States Court of Appeals for the Ninth Circuit in Cleugh v. Strakosh, supra, said:

"The phrase 'sufficient cause,' in §§ 871 and 872 of the Penal Code, means reasonable or probable cause. This appears in § 1487 of the same Code, which provides that where 'a party has been committed on a criminal charge without reasonable or probable cause,' he shall be released on habeas corpus. * * * Evidence showing reasonable or proba-

ble cause to believe the accused guilty is sufficient." (Citing cases.)

The District Court of Appeal of California in Ex parte Martinez, 36 Cal.App. 2d 687, 98 P.2d 528, 529, held:

"The term 'sufficient cause,' within statute providing that a defendant can only be held to answer when it appears from the evidence that there is sufficient cause to believe that defendant committed offense charged, means the same as 'reasonable and probable cause,' and hence a commitment based entirely on hearsay or incompetent evidence is unauthorized."

citing 7 Cal.Jur., Sec. 120, p. 984.

Therefore, it becomes a question of fact in this case whether the evidence presented is sufficient to show reasonable and probable cause to believe that the defendant is guilty of at least one count of the amended complaint in extradition. Inasmuch as it is a question of fact in each case no useful purpose would be served by citing and quoting from cases determining that fact under other evidence. It is so elemental that where evidence is taken in any proceeding the weight to be given the evidence is for the finder of fact that citation of authorities is unnecessary.

■■ Murder is a crime in both Yugoslavia and the United States. The definition of murder is substantially the same in both sovereigns. Section 187 of the West's Ann.California Penal Code defines murder as "the unlawful killing of a human being, with malice aforethought". Both Yugoslavia and California makes one a principal if he commits the offense directly or aids, abets, advises or encourages the commission of the crime. Murder is a crime coming within the provisions of the treaty as a basis for extradition.

■ Absolutely no evidence was presented that the defendant himself committed murder. The complainant relies entirely upon their evidence that members of the "ustasha" committed murders upon orders from the defendant. There is no necessity to review all of the evidence in this opinion. Only portions will be referred to for illustrative purposes.

The Ustasha at one time was a political party in Croatia. They ardently supported an ideology of a separate state for the Croatians. When political parties were abolished in Yugoslavia, the Ustasha continued to function secretly and when the Germans and Italians commenced invasion of Yugoslavia during World War II came out into the open and proclaimed an Independent State of Croatia.

On April 15, 1941, one Eugene Kvaternik was appointed by Dr. Ante Pavelic, the "Poglavnik" or "head man" of the Independent State of Croatia, as Ustasha Commissioner for Public Order and Security in Zagreb with directions that all organs of police, gendarmerie, etc., must execute his commands and orders and act in compliance with his instructions.

On April 16, 1941, there was published in the "Narodne Novine", the official paper of the Independent State of Croatia, an order of the Poglavnik appointing the defendant commissioner of the entire public security and internal administration. The following day on April 17, 1941, the order appointing the defendant Minister of Internal Affairs was published.

A number of changes were made in the ordinances and decrees as to the internal functions of the Ustasha. At one time the Ustasha was accountable only to the Poglavnik. At other times it was placed under the Minister of Internal Affairs. At all times Eugen Kvaternik remained at the head of the Ustasha. Mr. Kvaternik was a very ambitious man.

The Poglavnik by ordinance at one time required compulsory sojourn in collective and working camps of any persons dangerous to the public order and security or who might menace the peace and tranquillity of the Croatian nation. The Ustasha was authorized to establish the camps and to determine who was to be interned with no appeal or complaint to any court. These ordinances provided for the internment of the entire family

of anyone coming within the ordinance. Even before the issuance of such ordinance people were being interned by the Ustasha in Croatia.

The evidence is conflicting as to the orders made with reference to the Serbs, Jews and Gypsies. Some of the orders were for internment and deportation. Some of the evidence shows alleged verbal orders for the killing of the enemies of the Independent State of Croatia.

It was common practice during World War II to intern anyone who was even suspected to be an enemy or possible enemy of the government in power. Our own government saw fit to intern all Japanese on the west coast, men, women and children of all ages, immediately following Pearl Harbor.

The evidence is convincing that the ones named in the complaint with committing the murders called on the head of the Ustasha, Mr. Kvaternik, in Zagreb on many occasions. The evidence is slight that the defendant met with these men.

All of the evidence presented by the complainant is in narrative form. The affidavits were signed by the affiants but very evidently are not in their words. They are someone's conclusion as to what the testimony covered. A layman is often prone to sign anything presented if prepared by a court, an attorney or notary public without proper regard to its accuracy.

The same language appears time after time in the affidavits. The words "so-called Independent State of Croatia" appear in affidavit after affidavit. I doubt very much that this could be a coincidence.

There was no opportunity for this court to observe the demeanor or possible motives of these witnesses. I do not even have the words of the witnesses to judge their meaning or whether the answers were induced by the questions asked. I am presented with someone else's conclusion of what the testimony was. This is very unreliable evidence which can be given little weight.

 Much of the evidence presented by the complainant is hearsay. Hearsay evidence, under decisions of the higher courts, may be admissible in extradition cases but the weight to be given the evidence is for the committing magistrate. For example many of the affiants stated they knew a certain individual was dead because it was well known in the village; or because so-and-so told him or because "he was taken away and I never saw him again".

It is also apparent that the affidavits were drawn to incite passion and prejudice. They constantly refer to children of tender years, new-born babes, aged persons, cruel and inhuman treatment, etc. If a murder is committed, the age or sex of the victim should make no difference in the action taken.

This evidence may have been offered to show it was not a political offense which is one of defendant's affirmative defenses. This subject will be covered later.

The complainant attempts to lend credence to the affidavits by showing that they were taken in a court with a judge presiding. An examiner or investigating officer was present to conduct the examination with a registrar or recorder to report the proceedings. But the testimony of the witness is not furnished. In only a couple of instances is a question and answer given. The evidence on behalf of the complainant resolves itself into ex parte affidavits.

The defendant presented live witnesses who were subjected to vigorous cross-examination. In certain instances the live witnesses testified that the affiants were not telling the truth. No attempt was made to rebut this evidence. The complainant presented no rebuttal witnesses nor asked for time to secure rebuttal evidence. The live witnesses were in the United States and under no fear, inducement or compulsion to testify falsely. History indicates this might not have been true in Yugoslavia at the time the evidence was taken.

 One must also keep in mind that the events to which the witnesses testified

took place at least ten years before the testimony was taken. The passage of time tends to reduce the weight which may be given to evidence. Some of the affidavits must be eliminated from consideration because the affiants testified to matters of which they could not possibly have personal knowledge. Many of these affiants testified that certain people were loaded on trucks or railway cars, taken to such and such a camp and there killed. They could not know where they were taken or what happened to them. Such testimony stretches the credulity to the breaking point.

Most of the affidavits state that the ones committing the atrocities were Ustasha. Sometimes they were well-known members of the Ustasha. Sometimes they were in Ustasha uniform. Sometimes they were Ustasha in Moslem attire. Sometimes they were Ustasha wearing a fez. Sometimes they were Ustasha in ordinary attire. But *always* they were Ustasha.

No evidence was given as to how the Ustasha could be identified. They apparently wore no brands or means of identification. They were of no special color or distinguishing characteristics. One might try to identify a Democrat or a Republican by their appearance but it certainly would not be reliable enough to act upon in any important matter.

Some of complainant's witnesses testified they called on the defendant with reference to the treatment of the Serbs, Jews and Gypsies. Some of defendant's witnesses testified they also called upon the defendant. Again the evidence is in irreconcilable conflict. The complainant's witnesses testified the defendant told them his orders were being obeyed. The defendant's witnesses testified that the defendant told them to see the man upstairs (Mr. Kvaternik) that there was nothing he could do. Where does the truth lie? I believe the live witnesses when they said the defendant told them there was nothing he could do. Mr. Kvaternik was theoretically under the Minister of Internal Affairs during part of the period involved. I am convinced that

in fact Mr. Kvaternik was taking orders from no one.

The pro forma use of the name of a minister in such orders and decrees does not meet the quantum of proof necessary to show reasonable and probable cause to believe the minister is guilty of participating in crimes committed by others in his department. To so hold would probably result in failure to find any candidate who would accept the responsibilities of such a position if he was going to be held to answer for crimes committed by his underlings without more definite proof that they were acting under his orders. Such proof is lacking in this case.

I am cognizant of the proof necessary to hold a defendant for extradition. In Glucksman v. Henkel, 31 S.Ct. 704, 705, 221 U.S. 508, 522, 55 L.Ed. 830, the Supreme Court said:

"It is common in extradition cases to attempt to bring to bear all of the factitious niceties of a criminal trial at common law. But it is a waste of time. *For while, of course, a man is not to be sent from the country merely upon demand or surmise, yet if there is presented, in somewhat untechnical form according to our ideas, such reasonable ground to suppose him guilty as to make it proper that he should be tried, good faith to the demanding government requires his surrender. * * *"*

And in Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970, 972, Mr. Justice Holmes, speaking for the Supreme Court said:

"Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict. * * *"

I am convinced that Mr. Kvaternik usurped all powers over the Ustasha and that the defendant had little or none. Mr. Kvaternik even aspired to be Poglavnik and did anything he thought necessary to assert his power and gain his ambitions.

Upon consideration of all of the evidence presented and the authorities cited

by both parties I can reach but one conclusion. The complainant has not shown by sufficient competent evidence that there is reasonable or probable cause to believe the defendant guilty of any of the crimes charged. I hope I do not live to see the day when a person will be held to answer for a crime in either the California or United States courts upon such evidence as was presented in this case on behalf of the complainant. It would be mere speculation or surmise to find the acts charged were done upon orders from the defendant.

### Affirmative Defenses
### Political Offense

It is probably unnecessary for me to determine any affirmative defenses in view of my findings on probable cause. However, the issue was presented and the parties are entitled to my findings.

■ One of defendant's affirmative defenses is that the crimes, if any, are political in nature and not extraditable under the treaty. I do not deem it necessary in this case to go into the question of extradition for so-called war crimes.

Article VI of the treaty involved provides:

"A fugitive criminal shall not be surrendered *if the offense in respect of which his surrender is demanded be of a political character,* or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for an offense of a political character."

"Political character" or political offense has not been too satisfactorily defined. Generally speaking it is an offense against the government itself or incident to political uprisings. It is not a political offense because the crime was committed by a politician. The crime must be incidental to and form a part of political disturbances. It must be in furtherance of one side or another of a bona fide struggle for political power.

■ The evidence presented, as well as historical facts of which I can take judicial notice, proves that for years the peoples of the Balkans were in disagreement. Without any elections or choice of the Croatians following World War I Croatia was made part of the Kingdom of the Serbs, Croats and Slovenes. This government was controlled by the Serbs which imposed tremendous burdens upon the Croats. The Croats wanted an independent government or at least representation in the Sabor or Parliament. In 1928 Croatia held an election and elected delegates to the House of Parliament in Belgrade. Upon their arrival the Serbian leader of the House proceeded to shoot the delegates. Civil war nearly ensued and in 1929 King Alexander dissolved all political parties. The Croatians never forgot their ideal of an independent state and when the Germans and Italians invaded Yugoslavia during World War II they had their first opportunity to set up their own government.

On April 10, 1941 the Croatian leaders declared their independence and started to establish their own government. This was opposed by the Serbians and others and civil strife was rampant.

The leaders of the Independent State of Croatia called upon the Croats to support the new government and took what steps it considered necessary to further its struggle for political power. The evidence discloses that some villages, where the new government was unable to furnish protection, established their own militia for self protection. Bands from the new government would come in and take control only to be ousted by bands from their opponents. Some villages changed hands several times a day. These bands were not organized armed forces but in many instances ordinary civilians. Many lives were taken. Factions of the Chetniks and Partisans were doing everything they could to defeat the aims of the new government.

Conditions were such that even the complainant's own witnesses referred to the occupation by Italian troops as a "liberation". It was better to be under the control of the organized troops of Italy than continue the internal strife.

Complainant contends I must ignore completely the findings of Judge Hall and the opinion of the United States Court of Appeals on the question of whether the crimes charged are of a political nature. The Supreme Court of the United States vacated the judgment of the Court of Appeals and remanded the case for a hearing under Section 3184. Undoubtedly these decisions are not binding upon me as they have been vacated. However, they certainly are entitled to my consideration and are persuasive so far as the question of law is concerned.

In my opinion the order of the Supreme Court means nothing more than that the question of whether the crimes charged are of a political character cannot be determined upon Habeas Corpus but must be determined at a hearing under Section 3184.

The Supreme Court in Ornelas v. Ruiz, 161 U.S. 502, 509, 16 S.Ct. 689, 691, 40 L.Ed. 787, stated that whether the crime charged is of a political character is " * * * a question of mixed law and fact, but chiefly of fact".

I hereby adopt the opinion of the United States Court of Appeals in Karadzole v. Artukovic, supra, and the findings of Judge Hall in the Habeas Corpus action as my opinion and findings insofar as the question of law is concerned.

From the evidence presented I find as a fact that the crimes charged in all counts of the amended complaint are political in character.

## Jurisdiction

No question has been raised as to my jurisdiction to hear and determine this extradition matter. I hereby take judicial notice of the order of the District Court appointing me as United States Commissioner for this district which includes the power "to conduct hearings where persons are sought to be extradited by foreign governments, and to do all acts and things which may be necessary in connection therewith, and as more particularly described in Section 3184, Title 18, United States Code".

## Identity of Defendant

No contention has been made that the defendant before me is not the Andrija Artukovic named in the amended complaint on extradition. The evidence presented conclusively proves that the defendant before me is the person named in the amended complaint.

## Findings of Fact

### I.

That I have jurisdiction to hear and determine this case.

### II.

That the defendant before me is the person named in the amended complaint on extradition.

### III.

That the complainant has not proven by sufficient competent evidence that there is reasonable and probable cause to believe the defendant guilty of any of the crimes charged in the amended complaint on extradition.

### IV.

That the crimes charged in the amended complaint on extradition are of a political character and under Article VI of the treaty are not extraditable.

## Conclusions of Law

### I.

That the demand of the complainant for the surrender of the defendant should be denied for failure to prove by sufficient competent evidence that there is reasonable and probable cause to believe the defendant guilty of any of the charges in the amended complaint on extradition.

### II.

That the crimes charged in the amended complaint on extradition are of a political character and the surrender of the defendant should be denied.

## Order

It is hereby ordered, adjudged and decreed that the demand of the complainant

for the surrender of the defendant is denied and the bail bond of the defendant in the Habeas Corpus action should be exonerated.